[No. 63423-8. En Banc.]
Argued June 11, 1996. Decided September 19, 1996.

THE STATE OF WASHINGTON, *Respondent*, v. PATRICK EASTER, *Petitioner*.

*James R. Dixon, Christopher H. Gibson,* and *Nielsen & Acosta,* for petitioner.

230

*Norm Maleng, Prosecuting Attorney*, and *Gregory Jackson, Cynthia Gannett*, and *Theresa L. Fricke, Deputies*, for respondent.

TALMADGE, J. — Patrick Easter was involved in a serious automobile accident in which he and four others were injured. Prior to his arrest, Easter chose not to answer a police officer's questions as to what happened and whether he had been drinking. At trial, despite a pretrial order preventing any questions by the State on Easter's alleged evasiveness in response to the officer's questions, the officer was permitted to testify as to Easter's pre-arrest silence in the State's case in chief. In closing argument, the prosecution repeatedly characterized Easter's silence as that of a "smart drunk" and made it the central theme of the State's case.

We hold the State's conduct here violated Easter's Fifth Amendment right to silence. We reverse Easter's four convictions for vehicular assault and remand the case to the King County Superior Court for a new trial.

## ISSUES

1. Was Easter's constitutional right to silence violated when the State's witness testified as to Easter's pre-arrest silence and the State referred to such pre-arrest silence in closing arguments to the jury?

2. Was the error harmless beyond a reasonable doubt?

## FACTS

At 2:30 a.m. on October 31, 1991, at the intersection of

Westlake Avenue North (Westlake) and Mercer Street (Mercer) in Seattle, Easter's Isuzu Trooper collided with a yellow taxicab. Easter was returning from a wedding reception in Bellevue to his home on Westlake near the accident site. The cab was carrying six University of Washington students. Easter suffered injuries in the accident, and four of the students were seriously injured.

The two vehicles collided at a right angle, with Easter's Isuzu striking the driver's side of the cab. At the accident location, Westlake and Mercer intersect at right angles and both contain several lanes of traffic. Westlake runs one-way northbound, and Mercer runs one-way eastbound. At the time of the accident, the police did not know whether Easter had been improperly going southbound on Westlake and the cab eastbound on Mercer, or, alternatively, whether Easter was properly going eastbound on Mercer and the cab northbound on Westlake. A test administered shortly after the accident showed Easter's blood alcohol content was approximately 0.11. Several days later, Easter was arrested and charged with four counts of vehicular assault, after a police accident reconstructionist concluded Easter caused the accident by going the wrong way on Westlake.

Before the trial, Easter moved to exclude reference to his silence when questioned by Officer Fitzgerald of the Seattle Police Department at the accident scene. The trial court ruled Fitzgerald could not testify as to what he asked Easter, that Easter stood mute when questioned, or characterize Easter as evasive, but could only testify as to what Easter did "without characterizing it." Report of Proceedings at 123-27, 144.

Easter did not testify at trial. The State and the defense presented evidence supporting two different versions of how the accident happened. Easter contended he had been eastbound on Mercer, with the cab northbound on Westlake; and he unavoidably struck the cab when it improperly entered the intersection on a red light, turned left onto Mercer, and came to a stop in his path. His theory

was supported by the trial testimony and contemporaneous statements to a detective of three witnesses who did not know anyone involved in the accident. The State's theory was the cab was going eastbound on Mercer, and Easter's vehicle was proceeding southbound on Westlake (the wrong way on a one-way street) when the vehicles collided. This theory was supported by the testimony of the cab driver and the students, although the students were unfamiliar with the area and could not recall the street on which they had been traveling.

The State and the defense presented the testimony of accident reconstructionists. The experts' conclusions were contradictory. Detective Chapman testified Easter's Isuzu was moving southbound and the cab eastbound, based on his analysis of skid marks, scuff marks, roadway gouges, and auto body damage. The defense expert concluded Easter was going the right way on Mercer. He testified the configuration of skid marks was inconsistent with the State's theory. Because there was no secondary damage on the vehicles and the imprint of the Isuzu on the side of the cab was not smeared, he believed the cab had stopped when the vehicles collided, consistent with the defense theory of the facts.

Officer Fitzgerald's testimony occupied much of the trial, although he did not observe the accident or take a statement from a witness. He testified he arrived within minutes of the accident, and found Easter in the bathroom of a gas station at the intersection, with torn clothes, a cut forehead, and blood on his elbows and knees. He testified Easter "totally ignored" him when he asked what happened. Report of Proceedings at 206-09. He also testified when he continued to ask questions, Easter looked down, "once again ignoring me, ignoring my questions." *Id.* at 210. The court overruled an objection to this testimony.

Fitzgerald testified he took Easter back to the intersection and told him he would be placed under arrest or he could submit to a voluntary blood alcohol test at a hospital. Although Officer Fitzgerald said he had probable

cause to believe Easter was under the influence, and involved in a serious accident, Fitzgerald did not give Easter *Miranda*[1] warnings at that time.[2] Over objection, Fitzgerald testified Easter's attitude then changed. Easter finally talked and was no longer evasive. Easter allegedly asked for business papers in the truck and for a friend to be telephoned. Fitzgerald also testified Easter answered questions as to his driver's license and said his home was a mile north of the accident scene. Fitzgerald testified he suspected Easter was intoxicated because of Easter's slightly slurred speech, bloodshot eyes and odor of alcohol on his breath, although Easter had no coordination problems, walked without difficulty, and produced his license without fumbling or stumbling.[3]

On redirect, Fitzgerald contrasted Easter's earlier evasiveness with his willingness to communicate after learning he would be taken to give blood. Officer Fitzgerald also testified, over objection, he "felt at the time that the defendant was being smart drunk." The officer explained, "After you've arrested enough people for DWI, you will notice that there are basically two classes when you stop a car." The court sustained an objection. The officer then testified by the use of the term "smart drunk," he meant to say Easter "was evasive, wouldn't talk to me, wouldn't look at me, wouldn't get close enough for me to get good observations of his breath and eyes, I felt that he was trying to hide or cloak." The defense objected on the grounds this was improper conclusion testimony, but the court overruled the objection. The officer stated, "I felt he was trying to hide these observations." *Id.* at 243-45.

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3d 974 (1966).

[2]Fitzgerald drove Easter to Virginia Mason Hospital where blood was drawn. At no time during that morning was Easter placed under arrest. Not until the State's accident reconstructionist gave his opinion about the accident was Easter arrested.

[3]An emergency medical technician detected no odor of alcohol on Easter's breath. The trial court did not admit her opinion that Easter was not intoxicated. Acquaintances of Easter also testified he did not appear intoxicated after the reception.

In closing, the prosecutor argued two weeks of testimony were best summed up with the words "smart drunk. That is really what the *State of Washington v. Patrick Easter* is all about." Report of Proceedings at 790. He referred several times to testimony Easter was a "smart drunk" who had ignored Officer Fitzgerald, except when asking about his papers and friend, and concluded, "Easter is a smart drunk." *Id.* at 801-03, 806-08. In his rebuttal, the prosecutor argued "smart drunk" answered every question in the case. The prosecutor concluded: "I told you in the beginning . . . he's a smart drunk who knew he was intoxicated. He knew he was driving the wrong way down a one-way street. . . . I urge you . . . to find Mr. Easter the smart drunk in this case, guilty in Counts I, II, III, and IV." *Id.* at 856, 862-65.[4]

After the jury retired, defense counsel moved for a mistrial based upon improper closing argument; the trial court denied the motion. The jury found Easter guilty on all four counts. Easter appealed. The Court of Appeals, Division I, affirmed in an unpublished opinion and we granted review.

## ANALYSIS

### A. Pre-Arrest Right to Silence

Easter's principal claim in this case is that his right against self-incrimination under the Fifth Amendment was violated by testimony and argument regarding his silence at the accident scene. Additionally, the testimony and emphasis in the State's closing argument on Easter as a smart drunk constituted a comment on Easter's silence; Officer Fitzgerald testified the term meant Easter was evasive, "wouldn't talk" and was hiding something, all judgmental assertions.

---

[4]In closing, counsel for the State also asserted defense counsel deliberately misrepresented the facts and law in the case, erroneously described the trial court's instruction on proximate cause for the crime of vehicular assault, and commented on Easter's hiring of counsel. While we do not specifically address the issue of prosecutorial misconduct in our disposition of this case, we note such comments by counsel in closing argument are inappropriate.

 The State initially urges us to avoid any constitutional question here by characterizing the testimony that Easter was a "smart drunk" as the lay opinion of a police officer based on his experience and observations. The State urges this testimony was admissible because Officer Fitzgerald, while only a layperson for purposes of ER 701, was also "qualified by his practical experience of 13 years as a police officer . . . under ER 702." Supplemental Br. of Resp't at 26.[5] We agree an officer or lay person may opine that someone was intoxicated. *State v. Forsyth*, 131 Wash. 611, 230 P. 821 (1924); *City of Seattle v. Heatley*, 70 Wn. App. 573, 576-80, 854 P.2d 658 (1993), *review denied*, 123 Wn.2d 1011 (1994). But the testimony Easter was a smart drunk went beyond, and was more pejorative than, an opinion Easter was intoxicated. Officer Fitzgerald did not testify Easter was intoxicated. Rather, he testified Easter was a "smart drunk," characterizing Easter's silence as evasive and evidence of his guilt. The use of pre-arrest silence as substantive evidence of guilt implicates the Fifth Amendment and is not merely an evidentiary issue.

The Fifth Amendment to the United States Constitution states, in part, no person "shall . . . be compelled in any criminal case to be a witness against himself." This provision applies to states through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964). WASH. CONST. art. I, § 9 states: "[n]o person shall be compelled in any criminal case to give evidence against himself." We interpret the two provisions equivalently. *State v. Earls*, 116 Wn.2d 364, 375-76, 805 P.2d 211 (1991); *State v. Foster*, 91 Wn.2d 466, 473, 589 P.2d 789 (1979); *State v. Mecca Twin Theater & Film Exch., Inc.*, 82 Wn.2d 87, 507 P.2d 1165 (1973).

---

[5]Courts have ruled on evidentiary grounds pre-arrest silence is not admissible because of its low probative value and high potential for undue prejudice. *Silvernail v. State*, 777 P.2d 1169, 1175 (Alaska Ct. App. 1989) (collecting cases; noting "distrust of silence as probative evidence of guilt"); *People v. Fondron*, 157 Cal. App. 3d 390, 204 Cal. Rptr. 457 (1984); *People v. Quintana*, 665 P.2d 605 (Colo. 1983); *Commonwealth v. Nickerson*, 386 Mass. 54, 434 N.E.2d 992, 35 A.L.R.4th 722 (1982); *People v. Conyers*, 52 N.Y.2d 454, 438 N.Y.S.2d 741, 420 N.E.2d 933 (1981).

The right against self-incrimination is liberally construed. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1118 (1951). It is intended to prohibit the inquisitorial method of investigation in which the accused is forced to disclose the contents of his mind, or speak his guilt. *Doe v. United States*, 487 U.S. 201, 210-12, 108 S. Ct. 2341, 101 L. Ed. 2d 184 (1988). To enforce this principle, upon arrest, an accused must be advised he or she can remain silent. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 1633, 16 L. Ed. 2d 694 (1966).

At trial, the right against self-incrimination prohibits the State from forcing the defendant to testify. *State v. Foster*, 91 Wn.2d 466, 473, 589 P.2d 789 (1979); *Miranda*, 384 U.S. at 461. Moreover, the State may not elicit comments from witnesses or make closing arguments relating to a defendant's silence to infer guilt from such silence. As the United States Supreme Court said in *Miranda*, "[t]he prosecution may not . . . use at trial the fact [the defendant] stood mute or claimed his privilege in the face of accusation." *Miranda*, 384 U.S. at 468 n.37. The purpose of this rule is plain. An accused's Fifth Amendment right to silence can be circumvented by the State "just as effectively by questioning the arresting officer or commenting in closing argument as by questioning defendant himself." *State v. Fricks*, 91 Wn.2d 391, 396, 588 P.2d 1328 (1979).

Courts have generally treated comments on post-arrest silence as a violation of a defendant's right to due process because the warnings under *Miranda* constitute an "implicit assurance" to the defendant that silence in the face of the State's accusations carries no penalty. The use of silence at the time of arrest and after the *Miranda* warnings is fundamentally unfair and violates due process. *Brecht v. Abrahamson*, 507 U.S. 619, 628, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993); *Doyle v. Ohio*, 426 U.S. 610, 617, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). Pre-arrest silence, which lacks such "implicit assurance" from the State about its punitive effect in future proceedings, does not

implicate due process principles, although the constitutional inquiry does not end at that point.

The cases that have permitted testimony about the defendant's silence have done so only for the limited purpose of impeachment after the defendant has taken the stand, and not as substantive evidence of guilt when the defendant has not testified. *Fletcher v. Weir*, 455 U.S. 603, 606-07, 102 S. Ct. 1309, 71 L. Ed. 2d 490 (1982) (post-arrest silence could be used for impeachment when no *Miranda* warnings given);[6] *Jenkins v. Anderson*, 447 U.S. 231, 239, 100 S. Ct. 2124, 65 L. Ed. 2d 86 (1980) (pre-arrest silence can be used to impeach defendant's exculpatory testimony); *Raffel v. United States*, 271 U.S. 494, 46 S. Ct. 566, 70 L. Ed. 1054 (1926) (silence at first trial permissible to impeach defendant's testimony at second trial). *See also State v. Watkins*, 53 Wn. App. 264, 273, 766 P.2d 484 (1989); *State v. Hamilton*, 47 Wn. App. 15, 20-21, 733 P.2d 580 (1987). *See generally* Barbara Rook Snyder, *A Due Process Analysis of the Impeachment Use of Silence in Criminal Trials*, 29 WM. & MARY L. REV. 285 (1988).

The Court of Appeals stated the admission of testimony and argument as to Easter's silence was not error because it "went to Easter's credibility as to why he was acting the way he was." *State v. Easter*, No. 31561-7-I, slip op. at 11 (Wash. Ct. App. May 15, 1995). This is wrong. As the State correctly observed, because Easter did not testify at trial, his credibility was never an issue. The use of silence as impeachment is not an issue in this case.

The State argues pre-arrest silence may be used to support the State's case in chief because the Fifth Amendment is designed to deal only with "compelled" testimony, and Easter was under no compulsion to speak at the ac-

---

[6]*But see State v. Davis*, 38 Wn. App. 600, 605, 686 P.2d 1143 (1984) (use of post-arrest silence by the State to impeach or as substantive evidence violated a defendant's state constitutional right to due process regardless of whether *Miranda* warnings were given).

cident scene prior to his arrest. *Foster*, 91 Wn.2d at 473.[7] The State also finds support for this argument in the rule that post-arrest silence, after *Miranda* warnings, may not be used for impeachment. *Miranda* warnings implicitly assure the defendant his or her silence will not be used for any purpose once the compulsion of an arrest has occurred. Such silence is "insolubly ambiguous" because the defendant may be exercising the right to silence. *Doyle v. Ohio*, 426 U.S. 610, 617, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). Moreover, the State contends the defendant must specifically invoke the privilege to enjoy it prior to arrest or the *Miranda* warnings, citing *State v. Warner*, 125 Wn.2d 876, 884, 889 P.2d 479 (1995).

We decline to read the Fifth Amendment so narrowly as the State urges. An accused's right to silence derives, not from *Miranda*, but from the Fifth Amendment itself.[8] The Fifth Amendment applies before the defendant is in custody or is the subject of suspicion or investigation. The right can be asserted in any investigatory or adjudicatory proceeding. *Kastigar v. United States*, 406 U.S. 441, 444, 92 S. Ct. 1653, 32 L. Ed. 2d 212 (1972). Indeed, the *Miranda* warning states the accused is entitled by the Fifth Amendment to *remain* silent; *Miranda* indicates the right to silence exists prior to the time the government must advise the person of such right when taking the person into custody for interrogation. *Miranda*, 384 U.S. at 444. When the State may later comment an accused did not speak up prior to an arrest, the accused effectively has lost the right to silence. A "bell once rung cannot be un-

[7]Counsel for the State conceded in oral argument Easter was in custody when the officer decided Easter would have to submit to a blood test. Easter was not given *Miranda* warnings at that time. However, Easter did not claim error based on *Miranda* as to the testimony concerning his statements made following that point in time. Our resolution of this case does not require us to reach this issue.

[8]"[T]he right to silence described in those [*Miranda*] warnings derives from the Fifth Amendment and adds nothing to it." *Roberts v. United States*, 445 U.S. 552, 560, 100 S. Ct. 1358, 63 L. Ed. 2d 622 (1980). "The furnishing of the *Miranda* warnings does not create the right to remain silent; that right is conferred by the Constitution." *Jenkins*, 447 U.S. at 247 n.1 (Marshall, J., dissenting).

rung." *State v. Trickel*, 16 Wn. App. 18, 30, 553 P.2d 139 (1976). The State's theory would encourage delay in reading *Miranda* warnings so officers could preserve the opportunity to use the defendant's pre-arrest silence as evidence of guilt. *Davis*, 38 Wn. App. at 605.

The State's belief that the Fifth Amendment applies only to "compelled testimony" also implies that an accused acquires the right to silence only when advised of such right at the time of arrest. This is not so. No special set of words is necessary to invoke the right. *Quinn v. United States*, 349 U.S. 155, 162, 75 S. Ct. 668, 99 L. Ed. 2d 964 (1955) (no "magic language" or "ritualistic formula"). In fact, an accused's silence in the face of police questioning is quite expressive as to the person's intent to invoke the right regardless of whether it is pre-arrest or post-arrest. If silence *after* arrest is "insolubly ambiguous" according to the *Doyle* court, it is equally so *before* an arrest.

The majority of federal courts considering the issue have ruled pre-arrest silence cannot be used in the state's case in chief. In *United States v. Burson*, 952 F.2d 1196, 1200-01 (10th Cir. 1991), *cert. denied*, 503 U.S. 997, 112 S. Ct. 1702, 118 L. Ed. 2d 441 (1992), the Court of Appeals for the Tenth Circuit found it was error to admit testimony of pre-arrest silence, noting "whether Mr. Burson was advised of his privilege against self-incrimination is immaterial." In *Burson*, the right extended to a noncustodial interrogation of the defendant by two criminal investigators. *See also Coppola v. Powell*, 878 F.2d 1562, 1568 (1st Cir. ), *cert. denied*, 493 U.S. 969, 110 S. Ct. 418, 107 L. Ed. 2d 383 (1989); *United States v. Caro*, 637 F.2d 869, 876 (2d Cir. 1981). In *United States ex rel. Savory v. Lane*, 832 F.2d 1011, 1017-18 (7th Cir. 1987), the court explained the right to remain silent applies equally before arrest or trial, for one has "a constitutional right to say nothing at all" to police before the giving of any *Miranda* warnings.[9]

Courts in Utah, Nebraska, Wyoming, and Wisconsin

---

[9]The Court of Appeals for the Ninth Circuit has not yet ruled on whether pre-arrest silence is protected. *United States v. Calise*, 996 F.2d 1019, 1022 (9th

have also found the use of pre-arrest silence violates the Fifth Amendment. In *State v. Palmer*, 860 P.2d 339, 349 (Utah Ct. App.), *cert. denied*, 868 P.2d 95 (1993), the court indicated a person may exercise the right to remain silent prior to custodial interrogation and such a rule is an incentive to law enforcement to provide early *Miranda* warnings. In *State v. Rowland*, 234 Neb. 846, 851-52, 452 N.W.2d 758, 762-63 (1990), an officer testified the defendant, who had beer with him in his truck and was asleep, gave evasive answers to questions about his driver's license and his driving. The Nebraska Supreme Court held the testimony to be a violation of the defendant's Fifth Amendment right. In *Tortolito v. State*, 901 P.2d 387, 390 (Wyo. 1995), the court held the right to remain silent is self-executing, so an accused is presumed to be exercising that right by his silence, pre-arrest and pre-*Miranda*, when questioned by the State's agents for purposes of a criminal investigation. The logic of this position is well stated by the Wisconsin Supreme Court in *State v. Fencl*, 109 Wis. 2d 224, 237, 325 N.W.2d 703, 711 (1982):

> The Fifth Amendment protects a person from compelled self-incrimination at all times, not just upon arrest or during a custodial interrogation. Any time an individual is questioned by the police, that individual is compelled to do one of two things — either speak or remain silent. If both a person's pre-arrest speech and silence may be used against that person, as the state suggests, that person has no choice that will prevent self-incrimination. This is a veritable "Catch-22."

The State offers *United States v. Zanabria*, 74 F.3d 590 (5th Cir. 1996), and *United States v. Rivera*, 944 F.2d 1563, 1568 (11th Cir. 1991), in support of its position. However, the *Zanabria* court provided no analysis and cited no authority for its holding. The only authorities the *Rivera*

Cir. 1993), *cert. denied*, 510 U.S. 1078, 114 S. Ct. 895, 127 L. Ed. 2d 88 (1994); *United States v. Thompson*, 82 F.3d 849, 855-56 (9th Cir. 1996) (court determined admission of pre-arrest silence was not plain error in case where defendant raised the issue for first time on appeal, but expressly refused to express opinion about constitutionality of prosecutor's actions; no plain error present where federal circuits were split on the issue).

court noted were two cases, *Jenkins* and *Fletcher*, which involved using pre-*Miranda* silence to *impeach* a defendant's trial testimony. The *Rivera* court seemed unaware of the difference between cases like the present case, in which the pre-arrest silence is offered as substantive evidence, and cases like *Jenkins* and *Fletcher*, in which the pre-arrest silence was offered to impeach the defendant who had taken the stand to testify.

The State also relies on *State v. Helgeson*, 303 N.W.2d 342 (N.D. 1981), but there the silence was in the face of an accusation by a citizen, rather than a law enforcement officer or other representative of the State.

The purpose of the right against self-incrimination supports the conclusion a right to silence exists prior to arrest. The purpose of the right is to make the government obtain evidence on its own, and "to spare the accused from having to reveal, directly or indirectly, his knowledge of facts relating him to the offense or from having to share his thoughts and beliefs with the Government." *Doe*, 487 U.S. at 213. The right exists to put the entire load of producing incriminating evidence on the State "by its own independent labors." *Miranda*, 384 U.S. at 460. Applying the right more generally supports this policy.

Accordingly, Easter's right to silence was violated by testimony he did not answer and looked away without speaking when Officer Fitzgerald first questioned him. It was also violated by testimony and argument he was evasive, or was communicative only when asking about papers or his friend. Moreover, since the officer defined the term "smart drunk" as meaning evasive behavior and silence when interrogated, the testimony Easter was a smart drunk also violated Easter's right to silence.[10]

---

[10]Easter does not claim error in the officer's testimony as to Easter's appearance, conduct, blood alcohol level, slurred speech, bloodshot eyes, and odor of alcohol. *See Schmerber v. California*, 384 U.S. 757, 761-64, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966) (privilege against self-incrimination only protects testimonial communication, not observations of conduct or real evidence).

## B. The Error Was Prejudicial

■■ The State argues any error in its use of Easter's pre-arrest silence was harmless. The State bears the burden of showing a constitutional error was harmless. We find a constitutional error harmless only if convinced beyond a reasonable doubt any reasonable jury would reach the same result absent the error, *State v. Aumick*, 126 Wn.2d 422, 430, 894 P.2d 1325 (1995), and where the untainted evidence is so overwhelming it necessarily leads to a finding of guilt. *State v. Whelchel*, 115 Wn.2d 708, 728, 801 P.2d 948 (1990). Where the error was not harmless, the defendant must have a new trial. *Fricks*, 91 Wn.2d at 397.

Here, the State theorized Easter was driving the wrong way on Westlake. The evidence on this issue, including eyewitness and expert opinion testimony, did not overwhelmingly establish the State's theory. The State's emphasis on Easter's silence to argue his guilt may well have swayed the jury.

Officer Fitzgerald's testimony that Easter was evasive in response to pre-arrest questioning and was a "smart drunk" was elicited to insinuate Easter's guilt, and was in violation of the trial court's pretrial order excluding such commentary.[11] This testimony embodied Officer's Fitzgerald's *opinion* Easter was hiding his guilt. As such, it was impermissible. *State v. Black*, 109 Wn.2d 336, 348-49, 745 P.2d 12 (1987) ("No witness, lay or expert, may testify to his opinion as to the guilt of a defendant, whether by direct statement or inference."); *State v. Alexander*, 64 Wn. App. 147, 154, 822 P.2d 1250 (1992) ("An expert's opinion as to the defendant's guilt invades the jury's exclusive function to weigh the evidence and determine credibility."). Further, the State compounded the error by

---

[11]We do not condone cavalier violation of trial court pretrial rulings as in this case. Such violations may be so flagrantly prejudicial as to be incurable by instruction. *State v. Stith*, 71 Wn. App. 14, 22-23, 856 P.2d 415 (1993). Here, however, Easter has not argued that the violation of the pretrial order alone justifies reversal of the judgment and granting of a new trial.

emphasizing Easter's pre-arrest silence many times in closing argument. *See Brecht*, 506 U.S. at 638-39; *cf. Chapman*, 386 U.S. at 25 (prejudice where jury might have been swayed by repeated references to silence); *United States v. Tenorio*, 69 F.3d 1103, 1107 (11th Cir. 1995) (prejudice where comments on silence "pervaded the trial" and were touchstone of closing argument).

For the foregoing reasons, we hold the trial court's error in admitting evidence of pre-arrest silence was prejudicial, necessitating a new trial for Easter.[12]

## CONCLUSION

The Fifth Amendment right to silence extends to situations prior to the arrest of the accused. An accused's right to remain silent and to decline to assist the State in the preparation of its criminal case may not be eroded by permitting the State in its case in chief to call to the attention of the trier of fact the accused's pre-arrest silence to imply guilt.

Nothing in our conclusion, however, prevents the State from introducing pre-arrest evidence of a non-testimonial nature about the accused, such as physical evidence, demeanor, conduct, or the like. Our opinion does not address the right of the State under state and federal due process principles to impeach the accused's testimony where the accused testifies and puts his or her credibility before the trier of fact.

The trial court's decision to allow introduction of Easter's pre-arrest silence into evidence, compounded by comments in closing argument, was prejudicial error. Easter's convictions for vehicular assault are reversed and the case is remanded to the King County Superior Court for a new trial.

---

[12]In light of our disposition of this case, we do not address other errors including juror misconduct, prosecutorial misconduct, improper comments by the trial judge, or cumulative error.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, and SANDERS, JJ., concur.