[Nos. 20282-4-II; 21737-6-II.   Division Two.   May 23, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. TERRY
LEE KEENE, *Appellant*.

*In the Matter of the Personal Restraint of* TERRY LEE
KEENE, *Petitioner*.

---

*Mark W. Muenster*, for appellant/petitioner (counsel for appeal only).

*Arthur D. Curtis, Prosecuting Attorney*, and *Kelli E. Osler, Deputy,* for respondent.

ARMSTRONG, J. — The State charged Terry Lee Keene with the rape of a child. At trial, a detective testified that Keene did not return police telephone calls after being warned that she would turn the case over to the prosecutors unless Keene contacted her. In closing, the prosecutor asked the jury if these were the actions of an innocent man. Because the detective's testimony and the prosecu-

tor's argument constituted impermissible comments on Keene's right to pre-arrest silence, and the error was not harmless, we reverse the conviction and remand for a new trial.

## FACTS

Eleven-year-old C.K. ("the child") testified that she lived with her father, Julien K., from September 1989 to June 1990, when she was five years old and attending kindergarten. Julien's girl friend, Tina Keene, and her young son Michael also lived in the home.

In June 1990, Tina Keene's two brothers, Tim and Terry Keene, moved into the home. Tina had asked Tim to baby-sit the children, and Julien had asked Terry to help him around the house. Terry, however, did not spend a lot of time around the house because he was working, had a girl friend, and did not like the fights that occurred between Julien and Tina.

The child testified that, toward the end of the kindergarten year, Terry touched her inside and outside her vagina. She had told an investigating officer that the incident occurred while Tina and her father were spending the night at a motel. The child testified that she never had any touching problems with Tim Keene and that Tim did not baby-sit her.

The child testified that she first told her sister, E.M., about the touching in 1991, after she had moved to Oregon to be with her mother. She also told a friend, Meaghan Adler, when she was in the fifth grade. The child also testified that she told her third-grade teacher, Ms. Gremmel.

E.M. testified that, in 1991, her sister told her that she had been sexually molested. Meaghan Adler, her friend, testified that the child told her in August 1994 that she had been molested. Meagan then told her counselor, who informed authorities. But Claire Gremmel, the child's third-grade teacher, testified that the child never reported the abuse to her.

Vancouver Police Detective Pea called Terry several times to talk about the reported abuse. The two scheduled an appointment, but Terry called to say that he had missed it. Terry and Pea then exchanged phone messages. Pea testified,

> I returned several phone calls throughout the next following weeks indicating that if I hadn't heard from him by the 22nd I would need to turn it over to the prosecuting attorney's office.

Pea then testified that she did not hear from Keene again. The defense did not object to this testimony.

Tina and Terry both testified that he only baby-sat the children once for a short time, and that Tim had also been there. Tina also testified that she never spent a night in a motel with Julian in May or June 1990. Tina, Michael, and Terry moved out of the home at the end of June 1990.

During closing argument, the prosecutor argued,

> [Pea and the defendant] played phone tag for a little bit and Detective Pea had to leave several messages for him, finally leaving a message she would turn it over to the Prosecutor if she did not hear from him and she never heard from Terry Keene again. It's your decision if those are the actions of a person who did not commit these acts.

The defense did not object to this argument. The jury convicted Keene of rape of a child, and he appeals. Keene also filed a personal restraint petition, that we have consolidated with this appeal.

## ANALYSIS

■ Keene argues that the testimony and argument violated his constitutional right to remain silent. The court may review manifest errors affecting a constitutional right that were not objected to at trial. RAP 2.5(a); *State v. Eastmond*, 129 Wn.2d 497, 502, 919 P.2d 577 (1996).

■ Under the Fifth Amendment, the State may not use *postarrest* silence following *Miranda* warnings, *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 695, 10 A.L.R.3d 974 (1966), to impeach

a defendant's testimony at trial. *State v. Belgarde*, 110 Wn.2d 504, 511, 755 P.2d 174 (1988); *Doyle v. Ohio*, 426 U.S. 610, 619-20, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). The State also may not use *pre-arrest* silence in argument or in its case-in-chief as substantive evidence of a defendant's guilt. *State v. Easter*, 130 Wn.2d 228, 241, 243, 922 P.2d 1285 (1996).

> An accused's right to remain silent and to decline to assist the State in the preparation of its criminal case may not be eroded by permitting the State in its case in chief to call to the attention of the trier of fact the accused's pre-arrest silence to imply guilt.

*Easter*, 130 Wn.2d at 243.

In *Easter*, a police officer testified that the defendant was hiding his guilt by looking away and not answering his questions. *Easter*, 130 Wn.2d at 234, 241. The officer also labeled the defendant a "smart drunk," i.e., he was evasive and silent when interrogated. *Easter*, 130 Wn.2d at 234, 241. During closing argument, the prosecutor repeatedly labeled the defendant "a smart drunk." *Easter*, 130 Wn.2d at 234. On appeal, the court held that the testimony and argument violated the defendant's right to silence. *Easter*, 130 Wn.2d at 241.

In a companion case, *State v. Lewis*, 130 Wn.2d 700, 927 P.2d 235 (1996), the court also addressed the issue of pre-arrest silence. A detective testified that he called Lewis and asked about two assaults that were being investigated. *Lewis*, 130 Wn.2d at 703. Lewis gave a brief explanation of the events surrounding the complaints. The detective then told Lewis "that if he was innocent he should just come in and talk to me about it." *Lewis*, 130 Wn.2d at 703. But the detective did not testify that the defendant failed to come in or talk with him. *Lewis*, 130 Wn.2d at 704. And the prosecutor did not argue the defendant's failure to meet with or talk to the police. *Lewis*, 130 Wn.2d at 704.

On appeal, the court concluded that the officer had not

commented on the defendant's silence. *Lewis*, 130 Wn.2d at 705-06. The court noted, "The detective did not say that Lewis refused to talk to him, nor did he reveal the fact that Lewis failed to keep appointments." *Lewis*, 130 Wn.2d at 706.

■■ Here, although the testimony and argument falls between the impermissible conduct in *Easter* and the permissible conduct in *Lewis*, we hold that the detective and prosecutor impermissibly commented on the defendant's right to silence. Unlike in *Lewis*, Pea testified that she never heard from Keene after she warned him that she would turn the case over to the prosecuting attorney if she did not hear from him again. *See Lewis*, 130 Wn.2d at 706. A comment on an accused's silence occurs when the State uses the evidence to suggest guilt. *Lewis*, 130 Wn.2d at 707. Accordingly, the detective's comment violated the defendant's right to silence.

Furthermore, unlike in *Lewis*, the prosecutor then argued to the jury that it could decide if Keene's failure to contact the detective was the act of an innocent man. *See Lewis*, 130 Wn.2d at 704. This was a comment on the defendant's silence, suggesting that it was an admission of guilt. *Lewis*, 130 Wn.2d at 707.

■■ Because the testimony and argument constituted an impermissible comment on Keene's right to remain silent, the State bears the burden of showing the error was harmless. *Easter*, 130 Wn.2d at 242. A constitutional error is harmless if the court is convinced that any reasonable jury would have reached the same result in the absence of the error. *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985). We examine only the untainted evidence to determine if it is so overwhelming that it necessarily leads to a finding of guilt. *See Guloy*, 104 Wn.2d at 426. Where the error is not harmless, a defendant is entitled to a new trial. *Easter*, 130 Wn.2d at 242.

The untainted evidence consisted of the child's testimony that, when she was five, Keene had improperly touched her in May or June of 1990. The child also testi-

fied that she told her sister about the incident in 1991 and had told her friend about the incident in 1994. Both the sister and the friend confirmed the reports of abuse. The child also told an investigating officer that the incident occurred when Tina and her father had spent the night at a motel. Tina, however, testified that she and Julien never spent a night at a motel in May or June 1990. The child testified that she reported the abuse to her third grade teacher, who denied any reports of abuse. Finally, the child testified that Tim did not baby-sit her, although Tina testified she had specifically asked Tim to move in to baby-sit the child.

Thus, the untainted evidence consisted of the child's testimony supported by only a report one year after the abuse and a second report later. This evidence is not so overwhelming that it necessarily leads to a finding of guilt. *Guloy*, 104 Wn.2d at 426. Accordingly, we are not convinced that any reasonable jury would have reached the same result in the absence of the error. *Guloy*, 104 Wn.2d at 425. Because the error was not harmless, we reverse the conviction and remand for a new trial. *See Easter*, 130 Wn.2d at 242.

Keene also argues that he received ineffective assistance of counsel. Although this court is concerned with the representation accorded to Keene at trial,[1] we need not address the issue because we reverse the conviction and remand on a separate and independent ground. We also dismiss the defendant's personal restraint petition as moot.

Reversed and remanded.

HOUGHTON, C.J., and SEINFELD, J., concur.

---

[1] One of Keene's complaints is that his attorney failed to ask him directly if he abused the child. Keene also argues that his attorney solicited otherwise inadmissible evidence from the sister and the friend.