[No. 22769-3-III. Division Three. August 4, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. FIDENSIO NABOR SAAVEDRA, *Appellant*.

*Stephanie C. Cunningham*, for appellant.

*Ronald S. Zirkle, Prosecuting Attorney*, and *Kevin G. Eilmes, Deputy*, for respondent.

¶1 BROWN, J. — Fidensio Saavedra was convicted of raping 10-year-old M.R. On appeal, Mr. Saavedra contends: (1) his Fifth Amendment right to silence was violated when the trial court allowed mention of the State's failed efforts to contact him; and (2) the court erred in admitting testimony from two social workers. We disagree. The State concedes the trial court erred in failing to sentence Mr. Saavedra to a specific minimum term of confinement. Accordingly, we affirm and remand for resentencing.

## FACTS

¶2 Mr. Saavedra was charged with first degree child rape for events allegedly taking place in May 2002 when M.R. was 10. M.R. was nearly 12 at trial.

¶3 On a night in May 2002, Berta Rangel took her children, including 10-year-old M.R., to Patricia Saavedra's Yakima apartment at 1205 North Second Street. Ms. Saavedra's brother, Conrado, was supposed to watch the children while Ms. Rangel and Ms. Saavedra went to a dance.

¶4 According to M.R., Mr. Saavedra was also present. M.R. testified the children went to sleep on the living room floor. M.R. woke up with Mr. Saavedra lying on top of her. Allegedly, he held down her hands, pulled down her shorts

and had sexual intercourse with her. When Ms. Rangel and Ms. Saavedra came home, M.R. opened the door. M.R. stated she told her mother she wanted to go home because Mr. Saavedra had done "bad things" to her, and her mother told her not to talk about the incident. Report of Proceedings (RP) at 53. M.R. consistently identified Mr. Saavedra as the individual who raped her.

¶5 Ms. Rangel testified she saw Mr. Saavedra standing by the door when they returned that night. She testified M.R. seemed nervous and wanted to leave.

¶6 That summer, M.R. went to live with her aunt, Aurora Rangel Maurelio, who testified she noticed a change in M.R.'s demeanor; she seemed sad and cried a lot. In August, M.R. disclosed the alleged rape incident to Ms. Maurelio. Ms. Maurelio called the police and took M.R. to see a doctor.

¶7 Diane Liebe, M.D., examined M.R. on August 7, 2002. Dr. Liebe testified evidence showed abnormal injury to M.R.'s vagina and hymen. She concluded "some type of penetrating trauma to the vaginal area," occurred consistent with penile penetration. RP at 29. She testified M.R. was distressed and tearful during the interview and examination.

¶8 Without objection, officer Jeff Guilland testified for the State about his attempts to locate Mr. Saavedra:

Q All right. And on the date of August 2, could you tell us what you did[?]

A I began attempting to contact subjects involved in the case that could be potential witnesses or specifically eventually [sic] the suspect in this case.

Q All right. And who did you attempt to contact?

A: I went to the address 1205 North Second Street and attempted to make contact there by knocking and ringing the bell. This was at Apartment No. 5. And I left, on several occasions, over a period of, I want to say, probably a couple of months, left several cards there, business cards there, with number and name on them.

Q All right. And what was your purpose over that period of several months, as you describe it? What was your purpose in leaving your business cards at that address?

A In an attempt to have somebody call me back possibly with, you know, maybe a better address or a better phone number that I could reach the people that I wanted to reach, specifically Patricia [Saavedra] and the suspect in the case.

Q And the suspect was?

A Fidensio Saavedra, or Max.

Q Okay. Did you ever receive contact from anyone at that address?

A No.

 . . . .

Q . . . And did you have occasion to go to any other area or try to pursue any leads on trying to locate the defendant, Mr. Saavedra?

A Those were the leads I had, so, no.

Q Did you have occasion to seek out where [Mr. Saavedra] might be employed?

A I did get information in the investigation that he could be out at Job Corps. I left phone messages with Job Corps and got no response from them.

RP at 171-72.

¶9 Arguing cumulative, repetitious, and relevance grounds, the defense objected to the State's proposed testimony from two Department of Social and Health Services (DSHS) employees who met with Ms. Maurelia and M.R. in August 2002. The State intended to call Sandra Schramm and Jerry Whitney to testify regarding M.R.'s demeanor and their response to M.R.'s allegations. The defense argued the testimony would be irrelevant, as suggesting the allegations were believable because the witnesses believed M.R. and acted on her allegations. However, the court found the proposed testimony to have sufficient probative value, to "provide some contextual framework in terms of how this child was living with this allegation" and "how this matter

eventually got to the authorities." RP at 106. The court warned against repetitive testimony and inadmissible hearsay.

¶10 In very brief testimony, Ms. Schramm related due to her interview with Ms. Maurelia, she created a referral for M.R. to see Jerry Whitney, a child mental health specialist. Mr. Whitney briefly described meeting with Ms. Maurelia and M.R., describing M.R.'s demeanor and his decision to establish a "safety agreement" for the family. RP at 158. The agreement provided for M.R. to reside with Ms. Maurelia.

¶11 Mr. Saavedra testified he did not know M.R., was not at the apartment that night, and solely used the apartment address for mailing purposes. He testified he received officer Guilland's message at Job Corps and returned the call, leaving a message. Mr. Saavedra denied having sexual intercourse with M.R.

¶12 The jury found Mr. Saavedra guilty as charged. He was sentenced to "LIFE IN PRISON, WITH A MINIMUM TERM OF 93-123 MONTHS." Clerk's Papers (CP) at 5.

## ANALYSIS

### A. Right to Silence

¶13 The issue is whether the State's testimony from officer Guilland regarding his unsuccessful attempts to locate Mr. Saavedra were impermissible comments on Mr. Saavedra's Fifth Amendment right to remain silent. Although Mr. Saavedra did not object to this testimony at trial, an alleged error regarding a comment on the right to remain silent is a constitutional issue, and it may be raised for the first time on appeal. *State v. Gutierrez,* 50 Wn. App. 583, 588, 749 P.2d 213 (1988).

¶14 The fifth amendment of the United States Constitution provides, no person "shall be compelled in any criminal case to be a witness against himself." Similarly,

article I, section 9 of Washington's Constitution states, "[n]o person shall be compelled in any criminal case to give evidence against himself." The protection of article I, section 9 is coextensive with the protection of the Fifth Amendment. *State v. Earls,* 116 Wn.2d 364, 374-75, 805 P.2d 211 (1991). "The Fifth Amendment right to silence extends to situations prior to the arrest of the accused." *State v. Easter,* 130 Wn.2d 228, 243, 922 P.2d 1285 (1996).

¶15 The State may not use a defendant's constitutionally permitted silence as substantive evidence of guilt. *Id.* at 236. "Thus, '[a] police witness may not comment on the silence of a defendant so as to infer guilt from a refusal to answer questions.' " *State v. Romero,* 113 Wn. App. 779, 787, 54 P.3d 1255 (2002) (alteration in original) (quoting *State v. Lewis,* 130 Wn.2d 700, 705, 927 P.2d 235 (1996)).

¶16 The State argues the sum of the testimony merely related to unsuccessful attempts to make initial contact with Mr. Saavedra. Officer Guilland left business cards at Mr. Savaadra's last known address in an attempt to have "somebody call [him] back . . . with . . . a better address or a better phone number that I could reach the people I wanted to reach, specifically Patricia and the suspect in this case." RP at 171. He never received contact from anyone at that address, but acted on information "that [Mr. Saavedra] could be out at Job Corps. I left phone messages with Job Corps and got no response from them." RP at 172.

¶17 Mr. Saavedra cites no cases finding a violation of the right to pre-arrest silence under these circumstances. Instead, he cites cases distinguishable because the offending testimony concerned a defendant's silence after actual contact between law enforcement and the defendant. *See State v. Keene,* 86 Wn. App. 589, 592, 938 P.2d 839 (1997) (detective offered testimony that the defendant did not return phone calls or keep appointments after being warned that the case would be turned over to prosecutors unless he contacted the police); *Romero,* 113 Wn. App. at

785 (officer testified defendant would not waive *Miranda*[1] rights or talk to investigators after arrest); *Easter,* 130 Wn.2d at 232 (officer testified defendant "totally ignored" him when questioned after making contact with him at the scene of an accident). In these cases, the comments clearly implicated the defendants' right to silence.

¶18 Here, officer Guilland's testimony merely revealed his unsuccessful attempts to make initial contact with Mr. Saavedra by leaving a business card at his last known address. Officer Guilland did not testify that Mr. Saavedra was hiding in response to his inquiries, failed to answer questions, or even refused to contact him. The majority of the testimony was made within the context of explaining his inability to reach anyone to assist him in locating Mr. Saavedra during the course of his investigation. Further, the State did not ask the jury to consider this as evidence that Mr. Saavedra was guilty.

¶19 Given all, the testimony does not implicate Mr. Saavedra's right to remain silent. *See People v. Lawton,* 196 Mich. App. 341, 353, 492 N.W.2d 810 (1992) (finding the Fifth Amendment does not apply to testimony regarding a defendant's conduct prior to police contact); *see also Lewis,* 130 Wn.2d at 706 (declining to find a Fifth Amendment violation where no one testified the defendant refused to talk to police). Further, the State did not attempt to argue or exploit any inference of guilt based upon officer Guilland's testimony. *Romero,* 113 Wn. App. at 790.

¶20 However, assuming for argument officer Guilland's testimony implicated the Fifth Amendment, it would be, at most, an indirect comment. *See Romero,* 113 Wn. App. at 790-91. The State's questioning does not appear intended to draw out any comment on Mr. Saavedra's silence. *Romero,* 113 Wn. App. at 790. Nor, does the answer discussing the officer's attempts to locate Mr. Saavedra appear designed to inject a comment on Mr. Saavedra's right to remain silent. Finally, because the State did not exploit the assumed

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

indirect comment, Mr. Saavedra cannot show any prejudice. *Id.*

¶21 In sum, Mr. Saavedra's Fifth Amendment rights were not implicated by officer Guilland's testimony even if considered an indirect comment.

## B. Evidentiary Rulings

■ ¶22 The issue is whether the court erred in allowing testimony from two DSHS employees regarding their responses to M.R.'s allegations of rape. We review a trial court's admission of evidence for an abuse of discretion. *State v. Campbell,* 103 Wn.2d 1, 21, 691 P.2d 929 (1984). A court abuses its discretion when its decision is exercised on untenable grounds or for untenable reasons. *State v. Blackwell,* 120 Wn.2d 822, 830, 845 P.2d 1017 (1993).

■ ¶23 Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Here, the court allowed very limited testimony from two DSHS employees regarding their response to M.R.'s allegations. Ms. Schramm testified she generated a referral after her interview with M.R.'s aunt. Mr. Whitney testified he generated a safety plan for the family. Mr. Saavedra argues relevance. But, the court found the testimony provided context for how M.R. was dealing with the alleged incident and how the allegations eventually reached law enforcement, a tenable basis for allowing the testimony.

¶24 Relevant evidence may be excluded if its probative value is substantially outweighed by prejudice to the defendant. ER 403. Mr. Saavedra argues the testimony was unduly prejudicial because it allowed the jury to infer Ms. Schramm and Mr. Whitney believed M.R.'s allegations. However, Ms. Schramm's actions were taken in response to an interview with M.R.'s aunt, and Mr. Whitney merely stated his response to his interview with M.R. was to establish an agreement to keep M.R. safe. The State did not

argue any credibility inferences from this testimony. Further, the court specifically limited this testimony to exclude impermissible hearsay and repetitive information. Any prejudice to Mr. Saavedra was minimal. The court did not err.

### C. Sentencing

¶25 The issue is whether the court erred in failing to sentence Mr. Saavedra to a specific minimum term of confinement. The State appropriately concedes error.

¶26 RCW 9.94A.712(3) governs sentencing for first time sex offenders:

> Upon a finding that the offender is subject to sentencing under this section, the court shall impose a sentence to a maximum term consisting of the statutory maximum sentence for the offense and a minimum term either within the standard sentence range for the offense, or outside the standard sentence range pursuant to RCW 9.94A.535, if the offender is otherwise eligible for such a sentence.

Therefore, the court must impose a minimum term of confinement.

¶27 Instead, the court here imposed "LIFE IN PRISON, WITH A MINIMUM TERM OF 93-123 MONTHS." CP at 5. We accept the State's concession, vacate the sentence, and remand for resentencing consistent with RCW 9.94A.712.

¶28 Affirmed, but remanded for resentencing.

SWEENEY, A.C.J., and SCHULTHEIS, J., concur.