FILED
COURT OF APPEALS
DIVISION II

2014 DEC 16 AM 8:35

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45328-2-II |
| Respondent, | |
| v. | |
| JEREMY L. MCCRACKEN, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — A jury returned a verdict finding Jeremy McCracken guilty of third degree assault. McCracken appeals his conviction and sentence, asserting that (1) a State witness improperly commented on his post-arrest silence in violation of his due process rights, and (2) the sentencing court erred by ordering him to pay a $500 fee for his court appointed counsel as part of his legal financial obligations. We affirm.

## FACTS

On April 16, 2013, McCracken was present for a hearing on a civil matter at the Grays Harbor County Superior Court. As the trial court was announcing its final ruling, McCracken "got increasingly irritated to the point that he started to argue and talk to the judge in a loud voice." Report of Proceedings (RP) at 47. The trial court judge warned McCracken to stop talking or it would place him in contempt of court. McCracken continued to talk, and the trial court placed him in contempt of court and ordered court security officers to arrest him.

Dwight Combs, a court deputy with the Grays Harbor County sheriff's department, walked over to McCracken and told him that he was under arrest. McCracken pushed his chair

back and repeatedly told Combs, "[Y]ou're not going to touch me." RP at 48. McCracken then got up and started walking toward the exit door of the courtroom. David Haller, the deputy director of security for the Grays Harbor County courts, was standing near the courtroom exit and tried to stop McCracken when he approached. McCracken punched Haller in the chest, causing Haller to fall into a bench. McCracken's father convinced McCracken to calm down, and courtroom security officers arrested him without further incident. Based on this incident, the State charged McCracken with third degree assault.

Before trial, the trial court held a CrR 3.5 hearing to determine the admissibility of statements McCracken had made while in police custody. Following the CrR 3.5 hearing, the trial court ruled that McCracken's custodial statements were admissible at trial.

At trial, Combs and Haller testified consistently with the facts as stated above. The State also presented the testimony of three witnesses who were in the courtroom when McCracken allegedly assaulted Haller. Amy Airhart testified that after Combs told McCracken that he was being arrested for contempt, McCracken told Combs not to touch him before running toward the courtroom exit while pushing people away with his uninjured hand. Airhart stated that McCracken ran past her and that when she turned around she saw a security officer at the exit door falling backwards to the ground. Cynthia Harris similarly testified that McCracken fled when Combs attempted to arrest him and that a security officer at the exit door ended up on the floor after McCracken tried to get the officer out of his way. Grays Harbor County court clerk Susan O'Brien testified that she started to call 911 when she saw McCracken stand up as Combs approached him. O'Brien stated that she looked up from her phone and saw McCracken push Haller, which push caused Haller to stagger back and hit a bench.

No. 45328-2-II

McCracken testified that he had accidently bumped into Haller and did not intend to assault him. After the defense rested, the State called one rebuttal witness, Grays Harbor County Deputy Sheriff Robert Wilson. Wilson testified that he had escorted McCracken from the courtroom to the Grays Harbor County jail. Wilson stated that he had advised McCracken of his *Miranda*[1] rights and that McCracken chose to waive those rights to provide a statement. Later in Wilson's testimony, the following exchange took place:

> [State]: Did you ask him if he was warned to stop talking in court?
> [Wilson]: I did.
> [State]: What did he say?
> [Wilson]: He advised he was not.
> [State]: Did you ask him if he was aware that the officer was placing him under arrest?
> [Wilson]: I did.
> [State]: What was his response?
> [Wilson]: He advised that he wasn't aware that they were placing him under arrest.
> [State]: Did you ask him if he struck the officer?
> [Wilson]: I did.
> [State]: What did he say?
> [Wilson]: He didn't want to get into that was his statement. I don't want to get into that, was I believe the statement made.
> [State]: Thank you. Nothing further.

RP at 102-103.

The jury returned a verdict finding McCracken guilty of third degree assault, and the trial court sentenced him to 3 months of incarceration and 12 months of community custody. The trial court's sentence also imposed a $500 fee for McCracken's court appointed attorney.[2]

McCracken appeals.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] McCracken's sentence imposed a total of $1,528.03 in legal financial obligations, but McCracken challenges only the $500.00 fee for court appointed counsel.

3

## ANALYSIS

### I. COMMENT ON RIGHT TO SILENCE

McCracken first asserts that Wilson's testimony regarding his decision to decline answering a question improperly commented on his exercise of the right to silence. We agree, but hold this improper comment to be harmless.

A criminal defendant has a right to remain silent under the Fifth Amendment to the United States Constitution[3] and article I, § 9 of our State Constitution.[4] *State v. Easter*, 130 Wn.2d 228, 235, 922 P.2d 1285 (1996). We give the same interpretation to both clauses and liberally construe the right against self-incrimination. *Easter*, 130 Wn.2d at 235-36.

The State may not use a defendant's pre-arrest or post-arrest silence as substantive evidence of guilt. *Easter*, 130 Wn.2d at 238. Testimony that the defendant refused to answer questions can be an improper comment on the defendant's right to silence. *See e.g.*, *State v. Lewis*, 130 Wn.2d 700, 705, 927 P.2d 235 (1996) ("A police witness may not comment on the silence of the defendant so as to infer guilt from a refusal to answer questions."); *State v. Perrett*, 86 Wn. App. 312, 322, 936 P.2d 426 (1997) (statement that defendant "had nothing to say" was an improper comment on the right to silence). Testimony referencing a defendant's decision to not answer a question by the police amounts to an improper comment on the right to silence "when used to the State's advantage either as substantive evidence of guilt or to suggest to the jury that the silence was an admission of guilt." *Lewis*, 130 Wn.2d at 707.

---

[3] The Fifth Amendment of the United States Constitution states in part that no person "shall be compelled in any criminal case to be a witness against himself."

[4] Article I, § 9 of the Washington Constitution states in part, "No person shall be compelled in any criminal case to give evidence against himself."

Here, after Wilson testified that he had asked McCracken whether he struck Haller, the State asked Wilson, "What did [McCracken] say?" RP at 103. Wilson responded that McCracken told him "I don't want to get into that." RP at 103. Although this was an improper comment on McCracken's invocation of his right to silence, we hold that the error was harmless beyond a reasonable doubt.

In analyzing whether an improper comment on the defendant's right to silence was harmless, our standard of review depends on whether the comment was direct or indirect. *State v. Romero*, 113 Wn. App. 779, 790, 54 P.3d 1255 (2002). A direct comment on the defendant's right to silence occurs when the State or a witness specifically refers to the defendant's invocation of the constitutional right to silence, whereas an indirect comment occurs when the State or a witness refers to conduct of the defendant that could be inferred as an invocation of the right to silence. *State v. Pottorff*, 138 Wn. App. 343, 347, 156 P.3d 955 (2007). If the comment on the defendant's right to silence is direct, we must determine whether the error was harmless beyond a reasonable doubt. *Romero*, 113 Wn. App. at 790. And where the comment was indirect, we apply the nonconstitutional harmless error standard to determine whether there was any reasonable probability that the error affected the outcome of the case. *Pottorff*, 138 Wn. App. at 347.

Here, even assuming that Wilson's testimony constituted a direct comment on McCracken's invocation of the right to silence for which the higher constitutional harmless error standard applies, the error was harmless beyond a reasonable doubt. In *Pottorff*, an officer testified that he had asked the defendant whether he struck the victim with a cane, but that the defendant then chose to invoke his right to remain silent. 138 Wn. App. at 346. Division Three

of this court held that the officer's testimony constituted a direct comment on the defendant's right to silence, but that the comment was harmless beyond a reasonable doubt. *Pottorff*, 138 Wn. App. at 347-48.

In holding that the comment was harmless beyond a reasonable doubt, the *Pottorff* court noted that (1) the defendant did not immediately invoke the right to silence following *Miranda* warnings but, rather, agreed to answer the officer's questions before later invoking the right to silence; (2) after the officer testified about the defendant's invocation of the right to silence, the prosecutor "continued with non-related questioning and did not argue the point to the jury"; and (3) nothing in the record suggested that the jury relied on the defendant's silence as evidence of guilt. 138 Wn. App. at 347. Similarly here, (1) McCracken initially chose to waive his *Miranda* rights to answer Wilson's questions until Wilson asked him whether he had struck the victim; (2) the prosecutor ended its examination of Wilson immediately after Wilson testified that McCracken did not want to answer his question, and the prosecutor did not again refer to the testimony at issue; and (3) nothing in this record suggests that the jury used McCracken's silence to infer his guilt. Accordingly, following *Pottorff*, we hold that Wilson's improper testimony was harmless beyond a reasonable doubt. 138 Wn. App. at 347-48.

Moreover, we are convinced that any reasonable jury would have reached the same finding of guilt in the absence of Wilson's improper testimony. *See State v. Guloy*, 104 Wn.2d 412, 425-26, 705 P.2d 1182 (1985) (constitutional error is harmless where "the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt"); *State v. Keene*, 86 Wn. App. 589, 594, 938 P.2d 839 (1997) ("A constitutional error is harmless if the court is convinced that any reasonable jury would have reached the same result in the absence of the

error."). Here, Combs, Haller, Airhart, Harris, and O'Brien all described with substantial similarity the courtroom incident forming the basis for McCracken's assault charge. Each witness testified that McCracken attempted to flee the courtroom after Combs attempted to arrest him and that, when blocked by Haller at the exit door, McCracken pushed Haller into a bench. Although Airhart stated that she did not see McCracken make contact with Haller, her testimony nonetheless provided overwhelming circumstantial evidence that McCracken had pushed Haller. Because this untainted testimony provided overwhelming evidence that McCracken was guilty of third degree assault, Wilson's testimony concerning McCracken's right to silence was harmless error.

## II. LEGAL FINANCIAL OBLIGATIONS

Next, McCracken asserts that the trial court erred at sentencing by imposing a $500 fee for his court appointed counsel as part of his legal financial obligations. Again, we disagree.

McCracken first argues that the trial court violated his right to counsel by imposing the $500 fee because it failed to enter a finding that he had the current or likely future ability to pay the fee. But McCracken did not object at sentencing to the trial court's imposition of this fee absent a finding that he had the current or likely future ability to pay it. And our Supreme Court has held that the Constitution does not require a trial court to consider a defendant's ability to pay discretionary legal financial obligations before imposing such financial obligations at sentencing. *State v. Blank*, 131 Wn.2d 230, 241-42, 930 P.2d 1213 (1997). Rather,

> "[c]onstitutional principles will be implicated . . . only if the government seeks to enforce collection of the assessments 'at a time when [the defendant is] unable, through no fault of his own, to comply.' . . .

". . . It is at the point of enforced collection . . ., where an indigent may be faced with the alternatives of payment or imprisonment, that he 'may assert a constitutional objection on the ground of his indigency.'"

*State v. Curry*, 118 Wn.2d 911, 917, 829 P.2d 166 (1992) (alterations in original) (internal quotation marks omitted) (quoting *State v. Curry*, 62 Wn. App. 676, 681-82, 814 P.2d 1252 (1991) (quoting *United States v. Pagan*, 785 F.2d 378, 381-82 (2d Cir. 1986))). Accordingly, McCracken's argument regarding the sentencing court's failure to enter findings before imposing a discretionary fee for court appointed counsel does not implicate a constitutional issue unless and until such time that the State attempts to collect those fees.[5] Because McCracken did not object to the imposition of fees for court appointed counsel at sentencing, and because the trial court's imposition of the fees absent a finding that McCracken had the current or likely future ability to pay the fees does not implicate a constitutional issue, we decline to address this issue for the first time on appeal. RAP 2.5(a)(3).

McCracken also argues that the trial court lacked statutory authority to impose legal financial obligations for court appointed counsel. We disagree. RCW 9.94A.760(1) provides in relevant part, "Whenever a person is convicted in superior court, the court may order the

---

[5]McCracken acknowledges in his brief that our Supreme Court has repeatedly held that the United States Constitution does not require a finding of the defendant's ability to pay at the time it imposes discretionary legal financial obligations, but he nonetheless argues that the absence of such a finding "violates the right to counsel." Br. of Appellant at 12 (citing *Blank*, 131 Wn.2d at 239; *Curry*, 118 Wn.2d at 916). In forwarding his argument, McCracken does not cite any United States Supreme Court case that purportedly overruled our Supreme Court's decisions in *Blank* and *Curry*. Instead, he cites to *Fuller v. Oregon*, 417 U.S. 40, 45, 94 S. Ct. 2116, 40 L. Ed. 2d 642 (1974). But our Supreme Court's decisions in *Blank* and *Curry* addressed *Fuller* in holding that trial courts are not constitutionally required to determine a defendant's ability to pay before ordering the defendant to pay legal financial obligations. Accordingly, we follow our Supreme Court's precedent in those cases. *State v. Watkins*, 136 Wn. App. 240, 246, 148 P.3d 1112 (2006).

payment of a legal financial obligation as part of the sentence." And RCW 9.94A.030(30) defines "legal financial obligation" as including "court-appointed attorneys' fees, and costs of defense." Accordingly, the trial court had statutory authority to impose a $500 fee for court appointed counsel as part of McCracken's legal financial obligations. We affirm McCracken's conviction and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Melnick, J.