216 P.3d 438 (2009)
STATE of Washington, Respondent,
v.
Timothy Edward HAGER, Appellant.
No. 37539-7-II.
Court of Appeals of Washington, Division 2.
September 3, 2009.
*439 Valerie Marushige, Attorney at Law, Kent, WA, for Appellant.
Michelle Luna-Green, Pierce County Prosecuting Attorney, Tacoma, WA, for Respondent.
SCHULTHEIS, J.
¶ 1 Under the fifth amendment to the United States Constitution and article I, section 9 of the Washington Constitution, a defendant has the right to say nothing at all about the allegations against him. This privilege against self-incrimination prohibits the State from forcing the defendant to testify or eliciting testimony from witnesses relating to a defendant's silence or evasiveness. State v. Easter, 130 Wash.2d 228, 236, 241, 922 P.2d 1285 (1996).
¶ 2 Here, a State's witness violated a pretrial order prohibiting testimony that Timothy Hager was evasive during police questioning. The trial court denied Mr. Hager's subsequent motion for a new trial. We conclude that testimony pertaining to Mr. Hager's evasiveness violated Mr. Hager's privilege against self-incrimination and denied *440 him a constitutionally fair trial. Accordingly, we reverse and remand for a new trial.

FACTS
¶ 3 During November 2006, Andrea Lane found a letter to her 15-year-old stepson, Sean Lane, from his girl friend, P.B. (date of birth: October 7, 1991). The letter stated that P.B. did not want to have sex with Sean because when she was in the third grade, "`I was raped by my step dad which is still my step dad today.'" Report of Proceedings (RP) at 204. Ms. Lane went to Sean's school and showed the letter to the high school principal, who notified Dennis Daniels, the school counselor.
¶ 4 Shortly thereafter, Mr. Daniels, Detective Tom Callas, and Roni Jensen, a Child Protective Services investigator, met with P.B. to discuss the letter. Detective Callas and Detective Dennis Dorr later contacted Mr. Hager, P.B.'s stepfather, at his residence. Mr. Hager, who appeared to be on methamphetamine at the time, denied any wrongdoing.
¶ 5 On November 22, 2006, Mr. Hager was charged with one count of first degree rape of a child. Before trial, the trial court conducted an ER 404(b) hearing to determine whether Mr. Hager's alleged prior acts of sexual misconduct against minors should be admitted. The court excluded the evidence. It also excluded any reference to Mr. Hager's evasiveness during police questioning. The matter proceeded to trial and resulted in a hung jury.
¶ 6 The State elected to retry the case and filed an amended information in January 2008, charging Mr. Hager with first degree rape of a child, and in the alternative, child molestation in the first degree.
¶ 7 Before trial, Mr. Hager moved the court for an order prohibiting Detective Callas from testifying about Mr. Hager's deceptive or evasive behavior during police questioning. Defense counsel argued that it was permissible for Detective Callas to state that Mr. Hager appeared to be on methamphetamine and avoided eye contact during questioning, but that it was improper for him to opine that Mr. Hager was evasive. He argued, "You can state the demeanor. You can't say because of that I think he was deceptive or evasive. The jury is to make that conclusion." RP at 155.
¶ 8 The court granted the defense motion, stating that it was relying on the reasoning of the judge in the first trial. However, the first judge's ruling is not part of the record before us.
¶ 9 Mr. Hager did not testify at trial. P.B. testified that during the third grade she lived with her mother in an apartment. At some point during that school year, Mr. Hager moved in with them. She testified that one afternoon after school while she was napping, Mr. Hager put his fingers inside her vagina. She stated that she did not tell anyone about it because she was worried that she would be removed from her home and mother. She also testified that once while sitting in a chair with Mr. Hager, he put his hand between her legs above her clothing.
¶ 10 P.B. was questioned about the letter she wrote to Sean. She explained that she and Sean started dating in the 7th grade and broke up just before they entered the 9th grade. About two to three weeks after their breakup, P.B. sent the letter to Sean explaining why she would not have sex with him. During cross-examination, defense counsel elicited numerous inconsistencies in P.B.'s statements to a detective and at the first trial.
¶ 11 Detectives Dorr and Callas described their questioning of Mr. Hager. Detective Dorr testified that Mr. Hager denied digitally raping P.B. in 2001 or living in the apartment with P.B. and her mother. Detective Dorr testified that during the interview, Mr. Hager appeared to be on methamphetaminehe was jittery, his eyes were dilated, he avoided eye contact, and he spoke loudly and rapidly.
¶ 12 The prosecutor then asked Detective Callas, "What was Mr. Hager's demeanor like during the time that you had contact with him that day?" Detective Callas answered, "He appeared to be angry. He was evasive." RP at 432.
¶ 13 Defense counsel moved for a mistrial. The prosecutor explained that "same as last *441 time" he advised the detective to refrain from mentioning Mr. Hager's criminal history but this time he forgot to advise him to avoid using the word "evasive." RP at 432. The prosecutor conceded that the detective should not have used the word but argued that the error did not justify a mistrial as long as the jury was instructed to disregard the remark.
¶ 14 Defense counsel argued that Mr. Hager's credibility was central to the case "at least insofar as what he told the police officers" and therefore the detective's characterization of Mr. Hager as "evasive" was prejudicial and required a mistrial. RP at 433.
¶ 15 The trial court denied the motion, stating,
Well, I'm asprobably more so than defense counselfrustrated over this because of the fact that we took such pains to make these rulings and insure that this was not going to occur.
I'm going to deny the motion for mistrial and I'm going to do it on the basis that No. 1, I don't think the officer was acting in bad faith in terms of violating a rule. I think he just was not aware of that from a prior discussion with counsel.
RP at 434.
¶ 16 The court then advised the detective that it was permissible to testify about Mr. Hager's physical appearance but prohibited "conclusory remarks regarding your judgment as to his behavior in terms of his testimony or whether he was being truthful with you or not being truthful with you." RP at 435. The court instructed the jury to disregard the detective's comment.
¶ 17 Detective Callas testified without further incident, stating that Mr. Hager denied the rape allegation and pointed to P.B.'s biological father as a suspect.
¶ 18 The jury found Mr. Hager guilty of first degree rape of a child. The court imposed a standard range sentence of 108 months. Mr. Hager appeals.

ANALYSIS
¶ 19 Mr. Hager argues that the trial court erred in denying his motion for a mistrial after Detective Callas violated the in limine order prohibiting the detective from testifying that Mr. Hager was "evasive" during questioning. He contends the detective's testimony constituted an improper opinion of Mr. Hager's guilt and damaged his credibility.
¶ 20 The abuse of discretion standard governs review of a motion for mistrial. State v. Mak, 105 Wash.2d 692, 701, 718 P.2d 407 (1986). "The trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly. Only errors affecting the outcome of the trial will be deemed prejudicial." Id.
¶ 21 In determining whether a trial irregularity warrants a new trial, the reviewing court considers the seriousness of the irregularity, whether the statement was cumulative of other evidence, and whether the irregularity could have been cured by a jury instruction. State v. Escalona, 49 Wash.App. 251, 254, 742 P.2d 190 (1987).
¶ 22 We first address the seriousness of the irregularity. The trial court denied Mr. Hager's motion for a mistrial based in part on its finding that Detective Callas "was not aware" of the order prohibiting testimony that Mr. Hager was evasive. RP at 434. However, the record does not support this finding. The question of the admissibility of testimony regarding Mr. Hager's evasiveness was addressed at two trials. After extensive discussion of the issue, two judges ruled that the State could not present such testimony. In this context, the detective's comment is a particularly egregious violation of the trial court's order.
¶ 23 In any event, inadvertent or not, we conclude that Detective Callas' comment violated Mr. Hager's constitutional privilege against self-incrimination. An accused has "a constitutional right to say nothing at all about the allegations" against him. State v. Rowland, 234 Neb. 846, 852, 452 N.W.2d 758 (1990). The fifth amendment to the United States Constitution provides that "[n]o person shall ... be compelled in any criminal case to be a witness against himself." Article I, section 9 of the Washington Constitution *442 states that "[n]o person shall be compelled in any criminal case to give evidence against himself." We interpret the two provisions equivalently. State v. Earls, 116 Wash.2d 364, 375, 805 P.2d 211 (1991).
¶ 24 The Washington Supreme Court has explained the purpose of these amendments:
The right against self-incrimination ... is intended to prohibit the inquisitorial method of investigation in which the accused is forced to disclose the contents of his mind, or speak his guilt....
At trial, the right against self-incrimination prohibits the State from forcing the defendant to testify. Moreover, the State may not elicit comments from witnesses... relating to a defendant's silence to infer guilt from such silence.... The purpose of this rule is plain. An accused's Fifth Amendment right to silence can be circumvented by the State "just as effectively by questioning the arresting officer or commenting in closing argument as by questioning defendant himself."
Easter, 130 Wash.2d at 236, 922 P.2d 1285 (citations omitted).
¶ 25 Furthermore, the State must obtain incriminating evidence on its own. The Fifth Amendment right against self-incrimination "`spare[s] the accused from having to reveal, directly or indirectly, his knowledge of facts relating him to the offense or from having to share his thoughts and beliefs with the Government.'" Id. at 241, 922 P.2d 1285 (quoting Doe v. United States, 487 U.S. 201, 213, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988)).
¶ 26 Generally, testimony about a defendant's refusal to speak with police is admissible for impeachment purposes after a defendant has taken the stand. See id. at 237, 922 P.2d 1285 (citing cases in accord). However, it is well settled that the State may not use a defendant's refusal to talk to police as evidence of his or her guilt when the defendant has not testified. Id. at 241, 922 P.2d 1285.
¶ 27 Easter is instructive here. In that case, a police officer testified that the defendant was a "smart drunk" because he was evasive during police questioning, ignored the officer's questions, and appeared to be hiding something. Id. at 233-34, 922 P.2d 1285. The Easter court held that the police officer's testimony regarding the defendant's evasiveness violated the defendant's privilege against self-incrimination. Id. at 241, 922 P.2d 1285. In reversing the defendant's conviction, the court noted:
An accused's right to remain silent and to decline to assist the State in the preparation of its criminal case may not be eroded by permitting the State in its case in chief to call to the attention of the trier of fact the accused's pre-arrest silence to imply guilt.
Id. at 243, 922 P.2d 1285.
¶ 28 Similarly here, Detective Callas' comment violated Mr. Hager's privilege against self-incrimination. His comment that Mr. Hager was evasive was given in the context of Mr. Hager's denial of the allegations against him. As such, it was injected for no other purpose than to suggest Mr. Hager's guilt. And because Mr. Hager did not testify, he was unable to rebut this inference of guilt.
¶ 29 Relying on State v. Lewis, 130 Wash.2d 700, 927 P.2d 235 (1996), the State distinguishes between a mere reference to silence, which is not reversible error, and a comment on silence. It argues that Detective Callas' "single, isolated reference to defendant's demeanor cannot constitute a `comment' on defendant's right to remain silent. Instead, his testimony is more akin to the instruction of evidence regarding a defendant's demeanor or conduct." Br. of Resp't at 14. Pointing to the evidence that Mr. Hager was jittery, his eyes were dilated, and he spoke rapidly, the State argues, "the reference to `evasive' could have just as much to do with a methamphetamine user's demeanor, and less to do with involving the right to remain silent." Id.
¶ 30 The State's argument is not persuasive. First, Lewis is readily distinguishable from this case. In Lewis, a detective testified that in the course of asking the defendant about two assaults under investigation, he told the defendant, "`that if he was innocent he should just come in and talk to me about it.'" Lewis, 130 Wash.2d at 703, 927 *443 P.2d 235. Significantly, the detective did not say that Mr. Lewis refused to talk or that he failed to keep an appointment to talk with him. On appeal, the court held that the detective's comment did not violate the Fifth Amendment because there had been no statement that the defendant refused to talk with police and no statement that silence implied guilt. Id. at 706, 927 P.2d 235.
¶ 31 In reaching its conclusion, the Lewis court distinguished between a comment and a reference to silence, explaining that a statement constitutes a "comment" when the State uses a defendant's silence as evidence of guilt or an admission of guilt. Id. at 706-07, 927 P.2d 235. The Lewis court found the detective's remark a mere "reference" to silence because it indirectly referenced the defendant's exercise of his right to silence.
¶ 32 Unlike Lewis, the detective here unequivocally testified that Mr. Hager was evasive during questioning. The inference was that because Mr. Hager was evasive with the detective, he was guilty of the allegation against him. See Rowland, 234 Neb. at 852-53, 452 N.W.2d 758 (finding a Fifth Amendment violation where the trial court permitted a police officer to testify that the defendant was "evasive" during questioning). The problem with this inference of guilt is that "a defendant may be forced to testify to rebut such an inference." Lewis, 130 Wash.2d at 706 n. 2, 927 P.2d 235. Here, Mr. Hager did not testify and was therefore unable to rebut the inference of guilt.
¶ 33 Mr. Hager was under no obligation to assist the State in producing evidence against him. Nor was he required to testify at trial to rebut any inference of guilt from his evasiveness. Two trial judges explicitly prohibited any testimony regarding Mr. Hager's evasiveness. Nevertheless, in violation of two pretrial orders, Detective Callas testified that Mr. Hager was evasive during questioning. This violated Mr. Hager's constitutional privilege against self-incrimination and constitutes a serious trial irregularity.
¶ 34 As indicated, a new trial is warranted if the error affected the outcome of the trial. Mak, 105 Wash.2d at 701, 718 P.2d 407. We have concluded the irregularity is serious. Furthermore, the detective's comment was not cumulative of other evidence. Finally, an instruction could not have cured the prejudice. While it is presumed that juries follow the court's instructions, no instruction can "remove the prejudicial impression created [by evidence that] is inherently prejudicial and of such a nature as to likely impress itself upon the minds of the jurors." State v. Miles, 73 Wash.2d 67, 71, 436 P.2d 198 (1968).
¶ 35 Division Three of this court has noted:
[E]liciting such testimony [about silence] puts the defense in a difficult position. Counsel must gamble on whether to object and ask for a curative instructiona course of action which frequently does more harm than goodor to leave the comment alone. Other courts, including the Ninth Circuit, have expressed doubt about the effectiveness of curative instructions. And, of course, injecting evidence of... silence may also impermissibly pressure the defendant to testify and explain that silence.
State v. Curtis, 110 Wash.App. 6, 15, 37 P.3d 1274 (2002); see also Easter, 130 Wash.2d at 242 n. 11, 922 P.2d 1285 ("We do not condone cavalier violation[s] of trial court pretrial rulings as in this case. Such violations may be so flagrantly prejudicial as to be incurable by instruction.").
¶ 36 These concerns are present here. In instructing the jury to disregard the detective's comment, the court emphasized Mr. Hager's evasiveness. Furthermore, the jury may well have wondered why Mr. Hager did not testify to rebut the inference of guilt further strengthening the suggestion of guilt. We fail to see how an instruction could have cured the prejudice.

CONCLUSION
¶ 37 The trial court abused its discretion in denying Mr. Hager's request for a mistrial. Mr. Hager is entitled to a constitutionally fair trial in which there is no testimony that he was evasive during questioning. Accordingly, we reverse and remand for a new trial.[1]
I CONCUR: BRIDGEWATER, J.
*444 HUNT, J. (dissenting).
¶ 38 I respectfully dissent. The trial court has broad discretion to grant or to deny motions for a mistrial. We should reverse only when there is a clear abuse of this discretion. Such abuse exists only when no reasonable judge could have reached the same conclusion. State v. Johnson, 124 Wash.2d 57, 76, 873 P.2d 514 (1994). The facts of this case do not meet this standard. The officer's one-time mention of the term "evasive," taken in context, was not a comment on Hager's exercise of his right to remain silent, was not a comment on Hager's guilt, and did not incurably prejudice the jury.
¶ 39 As the majority acknowledges, the trial court granted Hager's motion in limine and ordered the State not to adduce from its witnesses that Hager acted "evasively" when the officers interviewed him during their investigation. The trial court later expressed understandable frustration when, during retrial, one State's witness unwittingly used this word in spite of the court's and the parties' advance efforts to prevent this very thing.
¶ 40 Nevertheless, the trial court opined that this one-time mention of the word was not ill-intentioned, denied Hager's motion for mistrial, and instructed the jury to disregard the officer's characterization of Hager's actions as "evasive" as follows: "You are to disregard that answer in its entirety and you are not to consider that testimony as part of any of your deliberations in this case." RP at 437. The trial court determined that this instruction would cure any possible prejudice to Hager and, therefore, it need not declare a mistrial. This decision was well within the trial court's discretion. The circumstances do not justify our overturning this reasonable, discretionary trial court decision.

I. NOT A COMMENT ON DEFENDANT'S SILENCE
¶ 41 I strongly disagree with the majority's characterization of the witness's single mention of the word "evasive" as an unconstitutional violation of Hager's privilege against self-incrimination warranting reversal of Hager's conviction and a third trial. Majority at 439-40. The single use of the word "evasive" did not constitute a comment on Hager's exercise of his right to remain silent during his pre-arrest interview with the officers.[2] Majority at 441-42. Furthermore, Hager did not, in fact, elect to exercise his right to remain silent at that time.
¶ 42 Instead, Hager agreed to an interview with the police, during which they engaged him in a dialogue for 10 to 15 minutes. RP at 430. When the officer used the word "evasive" during his testimony at Hager's later retrial, the officer was not commenting on Hager's refusal to answer questions or his denial of culpability during that investigatory interview.[3] Rather, the officer used the word in the broad context of describing Hager's demeanor during that pre-arrest interview. For example, the officer also testified that Hager's "[m]uscles were tightened up and tense" and that he "appeared to be angry." RP at 438; RP at 432. Similarly, another officer had earlier testified, "[Hager's] actions, his loud voice, the rapid speech, dilated pupils, and his jerkiness ... led me to believe that he was probably under the influence of methamphetamine." RP at 225-26. Thus, it was not unreasonable for the trial court to conclude that the second officer's single mention of the word "evasive" was not ill-intentioned.[4]
*445 ¶ 43 Moreover, unlike the facts in the cases the majority cites, here, there were no further repetitions of the word "evasive" by this officer, by another witness, or by the prosecutor in closing argument. On the contrary, once admonished, the officer strictly adhered to the trial court's instruction about the permissible scope of his testimony[5] and neither he nor any other witness uttered the word again.

II. NOT A COMMENT ON DEFENDANT'S GUILT
¶ 44 The majority asserts that the officer "injected" the word "evasive" "for no other purpose than to suggest Mr. Hager's guilt." Majority at 442-43. This assertion not only lacks support in the record, but also it directly contradicts and ignores the conclusion of the very trial court whose pretrial order use of the word violated. In spite of its frustration that its precautions had not prevented the utterance, the trial court clearly opined:
I'm going to deny the motion for mistrial and I'm going to do it on the basis that No. 1, I don't think the officer was acting in bad faith in terms of violating a rule. I think he just was not aware of that from a prior discussion with counsel.
RP at 434.
¶ 45 Just as we appellate judges do not review the trier of fact's assessment of witness credibility, we similarly should not second-guess the trial court's assessment of a witness's motive in uttering this single word. It was the trial court that had the opportunity to observe the witness's demeanor, the context in which he mentioned the word "evasive," and the witness's reaction to the trial court's admonition to avoid repeating the word. The record is devoid of support for the majority's conclusion that the officer "injected" the word solely to "suggest Hager's guilt." Furthermore, the majority's conclusion that the officer's utterance was purposefully designed to suggest Hager's guilt indefensibly disregards the trial court's finding that the utterance was merely inadvertent, though unfortunate. With all due respect to my learned colleagues, in my view, such unsupported discarding of the trial court's finding, which demonstrates the reasonableness of the trial court's discretionary action, is unjustified.

III. JURY PRESUMED TO FOLLOW COURT'S INSTRUCTIONS; NO PREJUDICE
¶ 46 The majority's holding also contradicts the long-standing principle that the jury is presumed to follow the trial court's instructions. State v. Warren, 165 Wash.2d 17, 28, 195 P.3d 940 (2008). Here, in addition to the specific curative instruction to the jury to ignore the officer's mention of the word "evasive," the trial court gave the following general jury instruction:
It is your duty to decide the facts in this case based upon the evidence presented to you during this trial. It also is your duty to accept the law from my instructions, regardless of what you personally believe the law is or what you personally think it should be. You must apply the law from my instructions to the facts that you decide have been proved, and in this way decide the case.
.... Your decisions as jurors must be made solely upon the evidence presented during these proceedings.
The evidence that you are to consider during your deliberations consists of the testimony that you have heard from witnesses, stipulations, and the exhibits that I have admitted, during the trial. If evidence was not admitted or was stricken from the record, then you are not to consider it in reaching your verdict....
One of my duties has been to rule on the admissibility of evidence. Do not be concerned during your deliberations about the reasons for my rulings on the evidence. If I have ruled that any evidence is inadmissible, or if I have asked you to disregard any evidence, then you must not discuss that evidence during your deliberations or consider it in reaching your verdict....
Instruction No. 1, CP 38. (emphasis added).
¶ 47 Not only do we presume that the jury followed the trial court's specific instruction *446 to ignore the officer's single use of the term "evasive," but also that the jury followed the trial court's general instructions to disregard any stricken or inadmissible evidence. The majority's speculation about the effect the stricken word "evasive" may have had on the jury does not defeat this well-settled presumption; nor does such speculation justify reversal of Hager's conviction.
¶ 48 It was not unreasonable for the trial court to conclude that a jury instruction could cure any potential prejudice resulting from the witness's single utterance of the word "evasive." In my view, contrary to the majority's holding, Hager was not "so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly." Majority at 441, citing State v. Mak, 105 Wash.2d 692, 701, 718 P.2d 407 (1986). I similarly disagree with the majority's characterization of this single "irregularity" as such "a particularly egregious violation of the trial court's order" that it could not be corrected by a jury instruction. Majority at 441.
¶ 49 Under the circumstances here, we cannot reasonably say that the trial court abused its discretion in choosing to cure this single utterance with an instruction to the jury to disregard it, an instruction that we presume the jury followed. Nor can we reasonably say that the trial court abused its discretion in denying Hager's motion for a mistrial. I would affirm.
NOTES
[1] Given this disposition, we do not address Mr. Hager's claim of sentencing error or his statement of additional grounds.
[2] Nor did the officer in any way comment on Hager's not taking the stand in his own defense at trial; and Hager does not argue on appeal that this was the case.
[3] During the interview, Hager denied having raped the victim, claimed that he had been living with his brother at the time, and suggested that the victim's biological father had raped her. RP at 225; RP at 439.
[4] In denying Hager's motion for a mistrial, the trial court noted the officer's lack of awareness about the trial court's pre trial order to avoid using the word "evasive." Although the prosecutor had told the officer not to use this word during the first trial, the prosecutor had apparently neglected to inform the officer again before the retrial. RP at 434.
[5] Thus, the only "repetition" was defense counsel's objection and the trial court's instruction to the jury to disregard this word.