248 P.3d 512 (2011)
STATE of Washington, Petitioner,
v.
Timothy Edward HAGER, Respondent.
No. 83717-1.
Supreme Court of Washington, En Banc.
Argued September 23, 2010.
Decided March 10, 2011.
Kimberley Ann DeMarco, Pierce County Prosecutor's Office, Tacoma, WA, for Petitioner.
Valerie Marushige, Attorney at Law, Kent, WA, for Respondent.
ALEXANDER, J.
¶ 1 We granted the State's petition to review a decision of the Court of Appeals in which that court reversed Timothy Hager's conviction on a charge of first degree rape of a child. In reaching its decision, the Court of Appeals concluded that a detective's statement that Hager was evasive during questioning incurably prejudiced Hager. It held, therefore, that the trial court erred by denying *513 Hager's motion for a mistrial. We reverse the Court of Appeals.

I
¶ 2 In November 2006, when P.B. was in the ninth grade, she wrote a letter to her ex-boyfriend stating that her stepfather, Timothy Hager, had raped her when she was in the third grade. The boyfriend's stepmother discovered the letter and showed it to the principal and a counselor at P.B.'s school in Onalaska. The counselor notified Child Protective Services (CPS) and the Lewis County Sheriff's Office. A CPS investigator, Roni Jensen, and Detective Tom Callas then met with P.B. to discuss the allegation in her letter. P.B. told them that Hager had digitally raped her in 2001, shortly after Hager moved into her mother's apartment in Sumner.
¶ 3 After that meeting, Detective Callas informed a detective of the Sumner Police Department, Detective Dennis Dorr, about what he had learned from P.B. Callas and Dorr then contacted Hager in a van he shared with P.B.'s mother. Hager initially told the detectives, both of whom were in plain clothes, that he was not Timothy Hager; however, after one of the detectives showed Hager his official badge, Hager acknowledged his true identity. During questioning, Hager denied having digitally raped his stepdaughter and suggested that P.B.'s biological father might have done so. Hager also said that he had lived with his brother in 2001, not in the apartment P.B. mentioned. He went on to say that, if he had ever lived in the apartment, it was in 1999, not 2001.[1]
¶ 4 Hager was charged in Pierce County Superior Court with first degree rape of a child. Prior to trial, the trial court granted a motion in limine prohibiting Detective Callas and Detective Dorr from testifying that Hager was evasive during questioning. The jury was unable to reach a verdict and, consequently, the trial court granted a motion for a mistrial.
¶ 5 The State elected to retry the case. Before the second trial, Hager again moved to prohibit the detectives from testifying that he had been evasive during questioning. Hager's attorney argued that, while it would be permissible for the detectives to testify that Hager avoided eye contact and appeared to be under the influence of methamphetamine, it would be improper for them to opine that Hager was evasive. The attorney said, "You can state the demeanor. You can't say because of that I think he was deceptive or evasive. The jury is to make that conclusion." Verbatim Report of Proceedings (VRP) at 155. The trial court granted Hager's motion in limine, stating that it was adopting the reasoning of the judge in the first trial.
¶ 6 In response to questioning at trial, Detective Dorr indicated that Hager was jittery, avoided eye contact, spoke loudly and rapidly, and appeared to be under the influence of methamphetamine. Later in the trial, when the deputy prosecutor asked Detective Callas, "What was Mr. Hager's demeanor like during the time that you had contact with him that day," the detective answered, "He appeared to be angry. He was evasive." Id. at 432. Hager's attorney immediately moved for a mistrial. Outside the presence of the jury, the deputy prosecutor apologized to the court and said that he forgot to remind the detective to avoid using the word "evasive." He acknowledged that the detective should not have used that word, but argued that a mistrial was not warranted as long as the jury was instructed to disregard the remark. The trial court denied Hager's mistrial motion, concluding that Detective Callas had not acted in bad faith and that the error could be cured with a jury instruction. After the jury was brought back into the courtroom, the trial judge instructed it to disregard Callas's remark about Hager appearing evasive.
¶ 7 Hager was found guilty of first degree rape of a child. He appealed to the Court of Appeals, which held that the trial court had *514 abused its discretion by denying Hager's motion for a mistrial. State v. Hager, 152 Wash.App. 134, 145, 216 P.3d 438 (2009). It concluded that Detective Callas's comment violated Hager's privilege against self-incrimination and that it "fail[ed] to see how an instruction could have cured the prejudice." Id. at 145, 216 P.3d 438. We subsequently granted the State's petition for review. State v. Hager, 168 Wash.2d 1017, 227 P.3d 853 (2010).

II
¶ 8 "In a criminal proceeding, a new trial is necessary only when the defendant `has been so prejudiced that nothing short of a new trial can insure that the defendant will be treated fairly.'" State v. Bourgeois, 133 Wash.2d 389, 406, 945 P.2d 1120 (1997) (quoting State v. Russell, 125 Wash.2d 24, 85, 882 P.2d 747 (1994)). The granting or denial of a new trial is a matter primarily within the discretion of the trial court, and the decision will not be disturbed unless there is a clear abuse of discretion. Id. "An abuse of discretion occurs only `when no reasonable judge would have reached the same conclusion.'" Id. (quoting Sofie v. Fibreboard Corp., 112 Wash.2d 636, 667, 771 P.2d 711, 780 P.2d 260 (1989)).

III
¶ 9 Hager argues that the trial court abused its discretion in denying his motion for a mistrial. His primary contention is that Detective Callas's description of him as "evasive" violated his privilege against self-incrimination under the Fifth Amendment to the United States Constitution[2] and article I, section 9 of the Washington Constitution.[3] Suppl. Br. of Resp't at 11-12. He relies largely on this court's decision in State v. Easter, 130 Wash.2d 228, 922 P.2d 1285 (1996). In that case, a police officer described the defendant in a vehicular assault case as a "smart drunk" and said that by his use of the term "smart drunk," he meant that the defendant was "evasive." We reversed the defendant's conviction, concluding that the officer's description of the defendant as "evasive" violated the defendant's Fifth Amendment right to remain silent and that the error in admitting the officer's comment was not harmless. Id. at 242-43, 922 P.2d 1285.
¶ 10 Our decision in Easter is not, however, entirely on point. There, the officer used the word "evasive" to refer to the defendant's silence, explaining that the defendant "`was evasive, wouldn't talk to me, wouldn't look at me, wouldn't get close enough for me to get good observations of his breath and eyes, I felt that he was trying to hide or cloak.'" Id. at 233, 922 P.2d 1285. The officer testified further that the defendant "'totally ignored'" him when he asked if he had been drinking and that, when he continued asking questions, the defendant looked down, "`once again ignoring me, ignoring my questions.'" Id. at 232, 922 P.2d 1285. These comments by the officer clearly referred to the defendant's silence. We properly held that the right to silence applies prior to arrest and that this right may not be eroded by allowing the State to imply guilt by calling to the jury's attention the defendant's prearrest silence. Id. at 243, 922 P.2d 1285.
¶ 11 Here we are confronted with an entirely different situation. Hager, unlike Easter, did not exercise his right to remain silent. Rather, he chose to talk to the detectives and told them, among other things, that he had never lived in the apartment with P.B.'s mother. He then said that, if he had, it was in 1999, not 2001. He also denied that he had raped his stepdaughter and even suggested that her biological father might have been responsible for doing so. As this court said in the companion case to Easter, "A police witness may not comment on the silence of the defendant so as to infer guilt from a refusal to answer questions." State *515 v. Lewis, 130 Wash.2d 700, 705, 927 P.2d 235 (1996) (emphasis added). Hager answered questions; he did not stand mute or invoke his right to remain silent.[4]
¶ 12 The facts here are more analogous to those we considered in State v. Clark, 143 Wash.2d 731, 24 P.3d 1006 (2001). There, the defendant spoke with police on two occasions prior to his arrest and gave conflicting accounts of why he had failed to meet with the officers at the crime scene as he had promised. We concluded that the defendant's statements were not "a matter of prearrest silence" and said that "[w]hen a defendant does not remain silent and instead talks to police, the state may comment on what he does not say." Id. at 765, 24 P.3d 1006 (citing State v. Young, 89 Wash.2d 613, 621, 574 P.2d 1171 (1978)).
¶ 13 The record before us shows that Detective Callas used the word "evasive" to describe Hager's answers to the detectives' questions, not his supposed silence. See VRP at 154, 435. Indeed, it is apparent that the trial court interpreted Callas's remark in that way, admonishing the detective not to make conclusory remarks about "whether [Hager] was being truthful with you or not being truthful with you." Id. at 435. Because the detective's remark was not a comment on Hager's silence, there was no infringement upon Hager's privilege against self-incrimination under the Fifth Amendment to the United States Constitution or article I, section 9 of our state constitution.
¶ 14 That said, the detective's comment was still improper in that it violated the trial court's order prohibiting the detectives from characterizing Hager as evasive and, in this way, expressing an opinion about Hager's credibility. Thus, the comments implicated another constitutional guaranty; namely, the right to trial by jury under the Sixth Amendment to the United States Constitution[5] and article I, sections 21[6] and 22[7] of the Washington Constitution. In that regard, we have said, "[N]o witness may offer testimony in the form of an opinion regarding the veracity of the defendant" because such testimony "is unfairly prejudicial to the defendant" and "invades the exclusive province of the jury." State v. Kirkman, 159 Wash.2d 918, 927, 155 P.3d 125 (2007) (citing State v. Demery, 144 Wash.2d 753, 759, 30 P.3d 1278 (2001)). We have also recognized that the testimony of a police officer "may be especially prejudicial because an officer's testimony often carries a special aura of reliability." Id. at 928, 155 P.3d 125 (citing Demery, 144 Wash.2d at 765, 30 P.3d 1278).
¶ 15 The fact that a witness has invaded the province of the jury does not, however, always require a new trial. Demery, 144 Wash.2d at 759, 30 P.3d 1278 ("Admitting impermissible opinion testimony . . . may be reversible error." (Emphasis added)). As we said in State v. Smith, 144 Wash.2d 665, 679, 30 P.3d 1245, 39 P.3d 294 (2001), a remark "can touch on a constitutional right but still be curable by a proper instruction." Thus, in State v. Warren, 165 Wash.2d 17, 195 P.3d 940 (2008), cert. denied, ___ U.S. ___, 129 S.Ct. 2007, 173 L.Ed.2d 1102 (2009), we held that the prejudice resulting from the prosecutor's argument that the jury was not required to give the defendant the "benefit of the doubt" was cured by the trial court's instruction on reasonable doubt.[8] We explained that "[h]ad the trial judge not intervened to give an *516 appropriate and effective curative instruction, we would not hesitate to conclude that such a remarkable misstatement of the law by a prosecutor constitutes reversible error," but because the trial judge "interrupted the prosecutor's argument to give a correct and thorough curative instruction, we find that any error was cured." Id. at 28, 195 P.3d 940.
¶ 16 As in Warren, the trial court here sustained Hager's objection to Detective Callas's improper statement and promptly instructed the jury to disregard it. In addition to giving this oral instruction, the trial court presented the jurors with a written instruction that they were "the sole judges of . . . credibility," and that, if they had been directed to disregard any evidence, they must not discuss it during their deliberations or consider it in reaching their verdict. Clerk's Papers at 17. We presume that the jury followed these instructions. Kirkman, 159 Wash.2d at 928, 155 P.3d 125.
¶ 17 We recognize, of course, that improper testimony may not always be susceptible to a curative instruction. As we said in State v. Miles, 73 Wash.2d 67, 71, 436 P.2d 198 (1968) (citing State v. Suleski, 67 Wash.2d 45, 406 P.2d 613 (1965)),
[w]hile it is presumed that juries follow the instructions of the court, an instruction to disregard evidence cannot logically be said to remove the prejudicial impression created where the evidence admitted into the trial is inherently prejudicial and of such a nature as to likely impress itself upon the minds of the jurors.
We are of the view, however, that Detective Callas's description of Hager as "evasive" was not so prejudicial that it could not be cured by the trial court's instructions. We say that because the statement regarding Hager's evasiveness was brief and was never mentioned by the State or any of its witnesses again. In addition, the capacity of this comment to cause prejudice is slight when compared to Hager's inconsistent statements about his whereabouts at the time of the alleged rape and his attempt to shift the blame to P.B.'s biological father. We have great faith in the common sense of the jurors and believe that they were able to come to a reasonable conclusion about Hager's credibility. In making that determination, it was reasonable for them to consider the testimony of Detective Dorr, who said that Hager was jittery, avoided eye contact, spoke loudly and rapidly, and appeared to be under the influence of methamphetamine. In light of that testimony, the jurors might reasonably have interpreted Detective Callas's comment as a description of Hager's behavior rather than as an opinion about Hager's credibility, especially since it was prompted by a question about Hager's demeanor.
¶ 18 In sum, the trial court properly dealt with the violation of its order by presenting the jury with a curative instruction. It was not necessary, therefore, to accord Hager a new trial in order to preserve his right to a fair jury trial. Thus, the trial court did not abuse its discretion by denying Hager's motion for a mistrial.

Conclusion
¶ 19 We hold that Detective Callas's comment that Hager was "evasive" did not infringe Hager's privilege against self-incrimination. To the extent the comment invaded the province of the jury, it was rectified by the trial court's prompt curative instruction. The trial court, therefore, did not err by denying Hager's motion for a mistrial. We reverse the Court of Appeals.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, CHARLES W. JOHNSON, TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, JAMES M. JOHNSON, and DEBRA L. STEPHENS, Justices.
SANDERS, J.[*] (dissenting).
¶ 20 "[U]nless the defendant offers affirmative testimony raising the issue of credibility," a witness may not offer opinion testimony regarding the defendant's veracity. State *517 v. Kirkman, 159 Wash.2d 918, 927-28, 155 P.3d 125 (2007). "Such testimony is unfairly prejudicial to the defendant because it invades the exclusive province of the jury." Id. at 927, 155 P.3d 125. The majority concedes that Detective Tom Callas's description of Timothy Hager as "evasive" was impermissible opinion testimony regarding Hager's veracity. But because the majority holds this impermissible testimony did not violate Hager's right to a fair trial, I dissent.
¶ 21 The majority recognizes that Detective Callas's statement that Hager was "evasive" was an improper statement regarding Hager's veracity. Majority at 515. And the majority concedes the statement violated Hager's Sixth Amendment rights. Id. The majority also recognizes the especially prejudicial nature of police testimony because "`an officer's testimony often carries a special aura of reliability.'" Id. at 515 (quoting Kirkman, 159 Wash.2d at 928, 155 P.3d 125).
¶ 22 However, the majority's assertion that a curative instruction preserved Hager's right to a fair trial is problematic for two reasons. First, the majority claims because the detective's statement regarding Hager's evasiveness was brief and never mentioned again, there is only a "slight" chance it caused prejudice. Majority at 516. But "an error is presumed prejudicial unless we conclude the error could not have rationally affected the verdict." State v. DeRyke, 149 Wash.2d 906, 912, 73 P.3d 1000 (2003) (citing State v. Clark, 143 Wash.2d 731, 775-76, 24 P.3d 1006 (2001)). A jury is "made up of human beings, whose condition of mind cannot be ascertained by other human beings. Therefore, it is impossible for courts to contemplate the probabilities any evidence may have upon the minds of the jurors." State v. Robinson, 24 Wash.2d 909, 917, 167 P.2d 986 (1946).
¶ 23 Second, the majority claims we should trust the jury followed the trial judge's instruction to disregard Detective Callas's description of Hager as "evasive." Majority at 515-16. But the majority later recognizes that the jury might not faithfully follow the judge's instruction when it asserts instead that the jury "might reasonably have interpreted Detective Callas's comment as a description of Hager's behavior rather than as an opinion about Hager's credibility." Id. at 516.
¶ 24 Prior to both of Hager's trials, the respective trial judges ruled that Detective Callas could not testify that Hager was "evasive." The statement was prejudicial and could not be cured by an instruction to the jury. "It is true enough that the purpose of the rights set forth in [the Sixth] Amendment is to ensure a fair trial; but it does not follow that the rights can be disregarded so long as the trial is, on the whole, fair." United States v. Gonzalez-Lopez, 548 U.S. 140, 145, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). A defendant's right to a jury trial "is no mere procedural formality, but a fundamental reservation of power in our constitutional structure. Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary." Blakely v. Washington, 542 U.S. 296, 305-06, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The right to a jury trial assures that the jury will make an independent determination of the facts of the case. Impermissible opinion testimony regarding the defendant's guilt or veracity invades the province of the jury and violates the defendant's constitutional right to a jury trial. Kirkman, 159 Wash.2d at 927, 155 P.3d 125.
¶ 25 "A `bell once rung cannot be unrung.'" State v. Easter, 130 Wash.2d 228, 238-39, 922 P.2d 1285 (1996) (quoting State v. Trickel, 16 Wash.App. 18, 30, 553 P.2d 139 (1976)). Here, the jury impermissibly heard that Hager was "evasive," a statement referring to his veracity, from a law enforcement officer with an "aura of reliability." The statement prejudiced Hager, entitling him to a new trial.
¶ 26 I dissent.
NOTES
[1] Detective Dorr testified that he later verified that P.B. had, in fact, lived with her mother and Hager in an apartment in Sumner during the 2000-2001 school year and had attended Daffodil Elementary School.
[2] "No person shall . . . be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This provision applies to the State through the Fourteenth Amendment to the United States Constitution. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).
[3] "No person shall be compelled in any criminal case to give evidence against himself." Wash. Const. art. I, § 9. We interpret article I, section 9 and the Fifth Amendment equivalently. State v. Earls, 116 Wash.2d 364, 375, 805 P.2d 211 (1991).
[4] "[S]ilence," the United States Supreme Court has said, "does not mean only muteness," but "includes the statement of a desire to remain silent," as well as of a desire to do so "until an attorney has been consulted." Wainwright v. Greenfield, 474 U.S. 284, 295 n. 13, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986).
[5] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI.
[6] "The right of trial by jury shall remain inviolate." Wash. Const. art. I, § 21.
[7] "In criminal prosecutions the accused shall have the right . . . to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed." Wash. Const. art. I, § 22.
[8] The due process clause of the Fourteenth Amendment to the United States Constitution requires that the State bear the burden of proving every element of the crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
[*] Justice Richard Sanders is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).