2016 AUG -1 AM 9:40
COURT OF APPEALS DIV I

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73562-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KEVIN LEE GROTHAUS, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 1, 2016 |

SCHINDLER, J. — A jury convicted Kevin Lee Grothaus of trafficking in stolen property in the first degree and theft in the second degree. Grothaus argues improper opinion testimony violated his constitutional right to a fair trial. Grothaus also challenges imposition of the mandatory victim penalty assessment under RCW 7.68.035 and the mandatory DNA[1] fee under RCW 43.43.7541. We affirm the conviction and entry of the judgment and sentence.

Grothaus worked as a carpenter and owned a carpentry business. His neighbor Joe Myers owned a construction company.

In November 2012, Grothaus asked Myers to hire him as a carpenter. Myers agreed to hire Grothaus as an hourly wage employee. Myers provided Grothaus with a company truck, a cell phone, and a number of tools including air compressors, nail

---

[1] Deoxyribonucleic acid.

guns, sanders, drills, saws, and ladders. Between December 2012 and March 2013, Grothaus pawned a number of Myers' tools as collateral for the loans he obtained.

Myers frequently visited the jobsites where Grothaus worked. Myers noticed Grothaus was sometimes not present. Myers also noticed Grothaus did not have all of the tools that Myers had provided. When asked, Grothaus told Myers the missing tools were at his father's house.

On March 5, 2013, Myers fired Grothaus. Myers told Grothaus to return the company truck and "make sure all the tools are in the truck." Grothaus returned the truck but "a lot" of the tools were missing. Myers wrote Grothaus a letter identifying the missing tools and demanded that he return the tools.

In a letter to Myers, Grothaus promised to return the tools the next week but did not do so. Myers contacted the police.

Snohomish County Sheriff's Office Detective Stephen Clinko located a number of the missing tools in pawnshops. Specifically, three pawnshops in Everett and one in Marysville. Detective Clinko recovered 16 tools Grothaus pawned between December 12, 2012 and March 2, 2013 to secure loans totaling $1,190. Grothaus admitted he did not return the tools to Myers. Grothaus told Detective Clinko he intended to redeem the tools from the pawnshops and return them to Myers but had not done so.

The State charged Grothaus with trafficking in stolen property in the first degree in violation of RCW 9A.82.050(1) and theft in the second degree in violation of RCW 9A.56.040(1)(a).

The defense filed a number of motions in limine including a motion to "[e]xclude testimony from any witness that gives an opinion or conclusion as to whether [Grothaus]

2

committed the crime charged." The prosecutor agreed that whether Grothaus

committed the charged crimes was an "ultimate issue[ ] for the jury" and did not "intend

to ask [witnesses] if [Grothaus is] guilty of committing the crime or anything." The court

granted the defense motion in limine. The court ordered the prosecutor to inform

witnesses of the court's pretrial rulings.

The State called a number of witnesses to testify at trial including Myers and

Detective Clinko.

During Myers' testimony, the prosecutor asked if Grothaus had permission to

pawn the tools Myers had provided.

> Let me ask you this, in a straightforward fashion. The defendant, while he
> was permitted to use those tools, was he permitted to pawn them? Did
> you ever give him that say-so?

In response, Myers stated, "That's theft. No." Defense counsel objected to the

response and moved for a mistrial.

The court denied the motion for a mistrial. The court ruled the jury could ignore

the improper testimony if instructed to do so. Defense counsel agreed the court's

proposed curative instruction was acceptable.

> THE COURT: . . . What I'm going to do when the jurors come back
> in, I'm going to let them know the answer to the last question was no, that
> the remainder of the answer will be stricken, and they should ignore that.
> [DEFENSE COUNSEL]: Thank you, Your Honor.
> THE COURT: Is that okay with you, [defense counsel]?
> [DEFENSE COUNSEL]: Yes, Your Honor.

The court instructed the jury to disregard the improper testimony.

> THE COURT: All right. Just before you left there was an objection.
> Regarding that objection, the portion of the answer that was "no" will
> stand. Anything beyond that the objection is sustained, and the jury will
> disregard any information beyond that.

3

Grothaus testified on behalf of the defense. The jury convicted Grothaus as charged.

Grothaus argues Myers' improper opinion testimony concerning his guilt violated his constitutional right to a fair trial. The State concedes Myers' testimony "That's theft" was an improper opinion on guilt but argues any prejudice was cured by the court's instruction to disregard the testimony. We agree.

As a general rule, no witness may offer testimony in the form of an opinion regarding the defendant's guilt or veracity. State v. Quaale, 182 Wn.2d 191, 199, 340 P.3d 213 (2014); State v. Kirkman, 159 Wn.2d 918, 927, 155 P.3d 125 (2007). Opinion testimony on guilt is unfairly prejudicial and violates the defendant's constitutional right to a jury trial. Quaale, 182 Wn.2d at 199; Kirkman, 159 Wn.2d at 927.

However, improper opinion testimony may be cured by instructing the jury to disregard the improper testimony and does not always require reversal. State v. Hager, 171 Wn.2d 151, 159, 248 P.3d 512 (2011); see State v. Haq, 166 Wn. App. 221, 264-65, 268 P.3d 997 (2012) (holding that although witness's testimony was improper, defendant was not denied the right to a fair trial because the court instructed the jury to disregard the improper testimony); State v. Thompson, 90 Wn. App. 41, 46-47, 950 P.2d 977 (1998) (same). We "presume jurors follow instructions to disregard improper evidence." Haq, 166 Wn. App. at 264; State v. Stein, 144 Wn.2d 236, 247, 27 P.3d 184 (2001) ("We presume that juries follow all instructions given.").

The record establishes the court instructed the jury to disregard Myers' testimony "That's theft." The court also instructed the jury that it was their "duty to decide the facts in this case based upon the evidence presented" and that if "evidence was not admitted

4

or was stricken from the record, then you are not to consider it in reaching your verdict."[2]

Grothaus claims the trial court should have instructed the jury that it was the jury's duty "to independently determine guilt . . . regardless of what [Meyers] or any witness thought about [Grothaus's guilt]." But because Grothaus did not object to the curative instruction the court proposed to give, he waived his right to argue for the first time that the curative instruction was deficient. RAP 2.5(a); see State v. Williams, 156 Wn. App. 482, 492, 234 P.3d 1174 (2010) (failure to request limiting instruction constitutes a waiver of right to assign error on appeal); State v. Stein, 140 Wn. App. 43, 70, 165 P.3d 16 (2007) (failure to request limiting instruction "waives any argument on appeal that the trial court should have given the instruction").

In any event, the improper comment on guilt was harmless beyond a reasonable doubt. The "untainted evidence is so overwhelming that it necessarily leads to the same outcome." In re Pers. Restraint of Cross, 180 Wn.2d 664, 688, 327 P.3d 660 (2014).

To convict Grothaus of theft in the second degree, the State had the burden of proving he "exert[ed] unauthorized control over the property . . . of another or the value

---

[2] Jury instruction 1 states, in pertinent part:

It is your duty to decide the facts in this case based upon the evidence presented to you during this trial. . . .

. . . Your decisions as jurors must be made solely upon the evidence presented during these proceedings.

The evidence that you are to consider during your deliberations consists of the testimony that you have heard from witnesses, and the exhibits that I have admitted, during trial. If evidence was not admitted or was stricken from the record, then you are not to consider it in reaching your verdict.

. . . .

. . . If I have ruled that any evidence is inadmissible, or if I have asked you to disregard any evidence, then you must not discuss that evidence during your deliberations or consider it in reaching your verdict.

(Emphasis added.)

thereof, with intent to deprive him or her of such property . . . which exceed(s) seven hundred fifty dollars in value."[3] RCW 9A.56.020(1)(a), .040(1)(a). Grothaus admitted there were only "a few" tools in the truck when he returned the truck to Myers and "certainly . . . a lot" of the tools were "missing." Grothaus testified he took tools belonging to Myers to pawnshops and used them as collateral for loans. Grothaus admitted he did not have the authority to pawn Myers' tools. Grothaus also admitted he knew Myers would not be able to "retrieve those items once [he] pawned them." The overwhelming untainted evidence supports the conviction.

At sentencing, the court waived all discretionary fees and costs but ordered Grothaus to pay the mandatory victim penalty assessment in the amount of $500, the mandatory DNA fee in the amount of $100, and restitution in an amount to be determined at a later hearing.

For the first time on appeal, Grothaus argues that as applied to an indigent defendant, imposition of the mandatory victim penalty assessment under RCW 7.68.035 and the mandatory DNA fee under RCW 43.43.7541 violates substantive due process.

In State v. Curry, 118 Wn.2d 911, 917, 829 P.2d 166 (1992), the Washington Supreme Court addressed a constitutional challenge to imposition of the victim penalty assessment and held constitutional principles are implicated only when the State seeks

---

[3] Jury instruction 7 states:

> To convict the defendant of the crime of theft in the second degree, each of the following four elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about November 23, 2012, though March 2, 2013, the defendant exerted unauthorized control over property of another or the value thereof;
> (2) That the property exceeded $750 in value;
> (3) That the defendant intended to deprive the other person of the property; and
> (4) That this act occurred in the State of Washington.
> If you find from the evidence that the elements have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty. On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of [the] elements, then it will be your duty to return a verdict of not guilty.

to enforce collection of the mandatory assessment. The court noted that "imposition of the penalty assessment, standing alone, is not enough to raise constitutional concerns." Curry, 118 Wn.2d at 917, n.3. In State v. Shelton, No. 72848-2-I, slip op. at 3 (Wash. Ct. App. June 20, 2016), we considered and rejected the same as-applied substantive due process challenge to the mandatory DNA fee statute. We held that until the State attempts to enforce collection of the DNA fee or impose sanctions for failure to pay, the claim is not ripe for judicial review and is not an error of constitutional magnitude subject to review under RAP 2.5(a)(3). Shelton, slip op. at 11-12. We also held that "unlike discretionary legal financial obligations, the legislature unequivocally requires imposition of the mandatory DNA fee and the mandatory victim penalty assessment at sentencing without regard to finding the ability to pay." Shelton, slip op. at 11.

We affirm the conviction and entry of the judgment and sentence.

WE CONCUR:

Cox, J.