2016 OCT -3 AH 9: 05


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73654-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES ELLIS THOMAS, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: October 3, 2016 |
| | ) | |

Cox, J. — James Ellis Thomas seeks reversal of his jury conviction for one count of first degree robbery. The improper opinion testimony of a State's witness was not so egregious that it could not be cured with an instruction and the trial court promptly gave a proper curative instruction. Accordingly, the trial court did not abuse its discretion in denying Thomas' motion for a mistrial. And the issues raised by Thomas in his statement of additional grounds lack merit. We affirm.

On December 14, 2013, Patti Owens, a loss prevention officer at Fred Meyer, saw Thomas shopping in the hardware section. She saw him take three flashlight packages, remove some of the plastic packaging with a tool he had in his pocket, and put the flashlights into his backpack. Thomas then went to the shoe department where he tried on a pair of mostly black Fila running shoes with red letters and red soles. He used his tool to take the security tag off the shoes

and put the all black shoes that he had been wearing into the empty shoe box. Wearing the Fila shoes, he took the security tag from a pair of girl's sneakers and put the sneakers into his backpack. Thomas then went to the grocery section where he put a gallon of milk and two packages of hot dogs into a shopping cart and walked toward the exit.

As soon as Thomas was outside, Owens identified herself and confronted him about taking merchandise without paying for it. Patric Trattles, another loss prevention officer, was standing close to Owens and Thomas. Owens grabbed Thomas' backpack and told him to push the shopping cart back inside the store. Once Thomas was back in the store, he pushed the cart away and said "[y]ou can have the stuff. I'm leaving." He was still wearing the Fila shoes and he began demanding that Owens return his backpack. Owens refused because it contained stolen merchandise, and Thomas ran back outside the store.

Outside the store, Thomas spoke briefly with Trattles, started to walk away, and then abruptly turned around and approached Owens at a fast pace. Trattles positioned himself between Thomas and Owens, and Thomas repeatedly bumped into Trattles' chest. Thomas told Trattles, "I'm going to knock your ass out," and then put himself into a "boxer's stance" with his hands in closed fists.

Thomas swung his arm towards Trattles' face and Trattles attempted to block the blow with his hand. Thomas struck three fingers on Trattles' hand causing them to bend back. Trattles testified that Thomas' punch was "about an eight" in strength on a scale of one to ten, and the punch caused him to feel pain

2

and numbness in his fingers. Thomas told Trattles, "I hit you, I hit you" before he heard the approaching sirens and left.

Police officers found Thomas about three blocks from the Fred Meyer store. He had a pair of wire cutters and box cutter, and he was wearing the Fila shoes. Thomas told Officer Matthew McCourt that he had not been to Fred Meyer that day. He said he had used the wire and box cutters to repair his truck and he had taken a bus from his truck's location back to his home in Everett. When asked about the shoes, Thomas told Officer McCourt that his girlfriend had picked them up about two weeks earlier.

Officer Michael Keith drove Thomas back to the Fred Meyer store and, when he took Thomas out of the car, he noticed that Thomas was not wearing any shoes, but only socks. The Fila shoes were on the floorboard in the back seat of the patrol car. Keith asked Thomas why he was no longer wearing the shoes, and Thomas said he did not know what Keith was talking about. Thomas insisted that he had been wearing white tennis shoes and the police must have planted the black and red ones.

Thomas was charged with first degree robbery. At the beginning of trial, the defense conceded that "this is simply a case of shoplifting, no more." It acknowledged that Thomas stole items from Fred Meyer but claimed "there is reasonable doubt that no force or threat of force was used by [Thomas] against anyone there at Fred Meyer."

Officer McCourt testified and on cross examination, the defense questioned him about his failure to investigate Thomas' claim that his girlfriend

gave him the shoes and his claim that he had not been to Fred Meyer on the day in question. During redirect, the State asked Officer McCourt why he did not confirm Thomas' address, review the bus information, or call Thomas' girlfriend. Officer McCourt answered, "They – honestly, they weren't believable." The defense objected and the court promptly sustained the objection and told the jury to disregard the officer's answer. After a discussion off the record and outside of the presence of the jury, the State questioned the officer without objection:

> Q. [D]id you make a decision not to follow up on the information [Thomas] provided you?
>
> A. Yes.
>
> Q. When did you make that decision?
>
> A. [W]hen Officer Keith was getting [] Thomas out of the back of his patrol car.
>
> Q. [W]as it based on something you heard at that point?
>
> A. It was based on something I heard and saw, yes.
>
> Q. [W]hat did [Thomas] say or do at that point that made your decision not to follow through?
>
> A. [He] said that the shoes were not his, and he was wondering what we had done with his actual shoes.
>
> Q. [W]as that inconsistent with what he had told you earlier?
>
> A. Yes.
>
> Q. How was it inconsistent?
>
> A. [He] said the black and red Fila shoes that he was wearing were obtained by his girlfriend a few weeks – or a couple weeks prior.[1]

---

[1] Report of Proceedings (March 17, 2015) at 280-81.

4

The defense did not call any witnesses, and Thomas did not testify. During closing arguments, the defense conceded that Thomas stole the Fila shoes from Fred Meyer, but argued that the evidence pointed to shoplifting, not robbery. Neither party mentioned any failure of Officer McCourt to investigate Thomas' claims or the reason for any such failure.

Pursuant to the defense's request, the jury was instructed on the lesser included offenses of second degree robbery and third degree theft. The jury convicted Thomas of first degree robbery.

At the sentencing hearing, Thomas moved for a new trial pursuant to CrR 7.5. He claimed that the officer improperly commented on the credibility of a witness. He raised an additional evidentiary issue, which is not before us. The State responded that the improper testimony was only related to the uncontested theft of the Fila shoes, and Thomas suffered no prejudice by Officer McCourt's improper statement. The trial court denied the motion deciding that the prosecutor had not intentionally sought out the comment on Thomas' credibility, because it came during redirect, and the jury was immediately instructed to disregard the testimony.

Thomas appeals.

## MOTION FOR A NEW TRIAL

Thomas claims he was denied a fair trial because Officer McCourt gave improper opinion testimony as to Thomas' guilt or veracity. He contends the trial court violated his constitutional rights by denying his motion for a new trial. We disagree.

As a general rule, a witness may not "'offer testimony in the form of an opinion regarding the veracity of the defendant' because such testimony" invades the province of the jury and "is unfairly prejudicial to the defendant."[2] Moreover, "the testimony of a police officer 'may be especially prejudicial because an officer's testimony often carries a special aura of reliability.'"[3]

The trial court immediately struck Officer McCourt's improper testimony and instructed the jury to disregard it. Therefore, a new trial is only warranted if the statement was "so egregious" it could not be cured with an instruction.[4]

In considering whether a trial irregularity warrants a new trial, we consider three factors: "(1) the seriousness of the irregularity; (2) whether the statement was cumulative of evidence properly admitted; and (3) whether the irregularity could be cured by an instruction."[5] This court reviews the trial court's decision to deny a motion for a new trial for abuse of discretion.[6] "An abuse of discretion occurs only when no reasonable judge would have reached the same conclusion."[7]

The State properly concedes on appeal that Officer McCourt's statement was an improper opinion. However, this testimony, taken in context, was of limited import because it pertained to something that was not at issue at trial.

---

[2] State v. Hager, 171 Wn.2d 151, 158-59, 248 P.3d 512 (2011) (quoting State v. Kirkman, 159 Wn.2d 918, 927, 155 P.3d 125 (2007)).

[3] Hager, 171 Wn.2d at 159 (quoting Kirkman, 159 Wn.2d at 928-27); State v. Demery, 144 Wn.2d 753, 765, 30 P.3d 1278 (2001) (recognizing that a police officer's testimony carries an "aura of reliability").

[4] State v. Perez-Valdez, 172 Wn.2d 808, 818, 265 P.3d 853 (2011); see Hager, 171 Wn.2d at 159 (a new trial is not always required when a "witness has invaded the province of the jury" because, even though improper testimony may touch upon a constitutional right, it may still be cured with a proper instruction).

[5] Id. at 818 (quoting State v. Post, 118 Wn.2d 596, 620, 826 P.2d 172 (1992)).

[6] Id. at 814.

[7] Hager, 171 Wn.2d at 156 (internal quotation marks and citation omitted).

Thomas was charged with robbery, and by the time of trial, he was no longer disputing that he stole the Fila shoes or that he was present in Fred Meyer earlier that day. Thus, the officer's statement on redirect that he did not believe Thomas' inconsistent statements about where he got the shoes or where he was earlier in the day, was no longer relevant to any disputed issue. The core issue and disputed element was whether Thomas had used force or the threat of force or whether Trattles suffered bodily injury. The officer never even investigated these matters and offered no testimony regarding Thomas' interactions with Owens and Trattles or whether Thomas used or threatened force. Officer McCourt's statement, while improper, was not a serious irregularity because it was not relevant to any disputed facts.

Because the officer's statement lacked relevance, we disagree with Thomas that the decision in State v. Jones,[8] is "virtually indistinguishable from [this] matter." In Jones, the only disputed issue was whether the defendant knew there was a gun was under his seat. Therefore, "an instruction would not have cured the harm,"[9] when the defendant said he was unaware of the gun and the officer said he did not believe him.

Turning to the second factor, the officer's statement was cumulative of other evidence. This officer did not investigate Thomas' claims because he did not believe that Thomas' girlfriend gave him the Fila sneakers or that Thomas had not been in Fred Meyer that day. There was ample other evidence before the trier of fact that Thomas stole the shoes and that he had been present in Fred

---

[8] 117 Wn. App. 89, 68 P.3d 1153 (2003).
[9] Jones, 117 Wn. App. at 92.

7

Meyer that day—including Thomas' own admission, testimony from Owens, and a videotape showing as much.[10]

Given the context of Officer McCourt's statement, its lack of relevancy to any disputed issue, the other evidence, Thomas' own admission on these matters, and the immediate curative instruction given by the trial court, we conclude that "the trial court did not abuse its discretion in denying a new trial."[11]

## COSTS

Thomas asks this court to deny the State its appellate costs due to his continued indigency.[12] We note that an order of indigency was filed in the trial court, and the record does not reflect any findings by the trial court that Thomas' financial condition has improved. Unless a trial court finds that an indigent defendant's financial condition has improved, we presume the defendant continues to be indigent.[13] The State has failed to overcome that presumption.

Thomas is 57 years old and has been sentenced to a term of 144 months. There is no "realistic possibility" that he will be in a position to find gainful employment once he is released from prison sufficient to pay his appellate

---

[10] See State v. Rafay, 168 Wn. App. 734, 811, 285 P.3d 83 (2012) (holding when the jury had substantial evidence about all of the issues upon which the detective had improperly given his opinion, the prompt curative instruction combined with the general instruction that the jury is the sole judge of credibility allowed the jury to decide the case solely on the evidence properly admitted).

[11] Perez-Valdez, 172 Wn.2d at 818-19.

[12] See RAP 14.2 (costs awarded to party that "substantially prevails on review" unless appellate court directs otherwise in decision terminating review); RCW 10.73.160 (court may order offender to pay appellate costs).

[13] RAP 15.2(f).

costs.[14] We exercise our discretion "to rule that an award to the State of appellate costs is not appropriate."[15]

## STATEMENT OF ADDITIONAL GROUNDS

### Sufficiency

Thomas argues there was insufficient evidence to support his conviction for robbery because there was insufficient evidence that he took property "from a person." We disagree.

We review a defendant's challenge to the sufficiency of the evidence by asking whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.[16] In answering this question, we view the evidence in the light most favorable to the State, drawing all reasonable inferences in favor of the State.[17]

Thomas argues that there was no evidence that he took property from anyone at the Fred Meyer store. However, "[a] person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone."[18] The evidence shows that Thomas took and refused to return property belonging to Fred Meyer in the presence of Owens. Thomas relies on the holding in State v. Nam[19] to support his position that there must be

---

[14] State v. Sinclair, 192 Wn. App. 380, 393, 367 P.3d 612 (2016).
[15] Id.
[16] State v. Finch, 137 Wn.2d 792, 831, 975 P.2d 967 (1999).
[17] Id.
[18] RCW 9A.56.190 (emphasis added).
[19] 136 Wn. App. 698, 704-05, 150 P.3d 617 (2007).

9

evidence that he took the property from the victim. We are unpersuaded because in <u>Nam</u> the State had "omitted the statutory language criminalizing taking personal property in a victim's presence."[20] Because the State had failed to charge the defendant with the wrongful taking of property <u>in the presence of</u> another, there was insufficient evidence to convict him of robbery based on his taking of the victim's purse from the backseat of the car without her knowledge.[21]

In this case, the jury was properly instructed that robbery includes the wrongful taking of property in the presence of another. Because Thomas' conviction for first degree robbery was supported by substantial evidence,[22] we need not address the evidence that would have supported a conviction on the lesser included offenses of second degree robbery or third degree theft.

### Jury Bias

Thomas contends that he was deprived of a fair trial because juror 7 was biased. We disagree.

"Actual bias is a ground for challenging a juror for cause,"[23] and the trial court has the duty to excuse any juror who is unfit by reason of bias.[24] The mere fact that a juror expresses or forms an opinion is not in itself sufficient to sustain a challenge based on actual bias.[25] Instead, "the court must be satisfied, from all

---

[20] <u>Id.</u> at 703-04.
[21] <u>Id.</u> at 702-06.
[22] <u>See</u> <u>State v. Richie</u>, 191 Wn. App. 916, 926, 365 P.3d 770 (2015) (holding that the evidence was sufficient to support a robbery conviction when the victim was a store employee who tried to stop the theft of store merchandise).
[23] <u>State v. Lawler</u>, 194 Wn. App. 275, 281, 374 P.3d 278 (2016).
[24] RCW 2.36.110.
[25] RCW 4.44.190.

the circumstances, that the juror cannot disregard such opinion and try the issue impartially."[26]

"The trial judge is in the best position upon observation of the juror's demeanor to evaluate the responses and determine if the juror would be impartial."[27] We review its determination for abuse of discretion.[28]

The defense questioned the jury pool and asked if anyone thought police officers were more believable just because they're police. This exchange followed:

> Juror 7: I think so . . . .
>
> Defense: [J]ust by getting up on the witness stand you're automatically believing them more than you would a civilian, someone not a police officer? Do you agree with that statement?
>
> Juror 7: I'd say that's fair.
>
> Defense: It's fair?[29]

Defense counsel then turned to Juror No. 8.

> Defense: I know you were a police officer for many years. I am interested to hear your perspective on that question.
>
> Juror 8: Well, it's not believability. It's bias. And there are police officers . . . that are just as biased as any other person . . . . So I don't have any more believability of the police officer as anybody else on the witness stand.
>
> Defense: [Y]ou don't give it more weight just by the fact [that the witness is a police officer]?
>
> Juror 8: Absolutely not. . . . I've seen bias in police work . . . . I think that pretty much says it all right there.[30]

---

[26] Id.
[27] State v. Brett, 126 Wn.2d 136, 158, 892 P.2d 29 (1995).
[28] Id.
[29] Report of Proceedings (March 16, 2015) at 110-11.
[30] Id. at 111-12.

After considering the responses of jurors 7 and 8, defense counsel elected to excuse juror 8 and keep juror 7. Trial counsel's decision on whether to accept or dismiss a juror is often based on counsel's strategy, experience, and discretion, and there may be legitimate, tactical reasons to forego challenging a juror whose responses might suggest some bias.[31] Any action by the trial court to sua sponte excuse a juror "runs the risk of disrupting trial counsel's jury selection strategy."[32]

The trial court was in the best position to evaluate the potential jurors' demeanor and manner, including juror 7's demeanor in response to the statements of juror 8, and it determined that juror 7 could be fair. The trial court's determination was apparently shared by defense counsel. There was no abuse of discretion in its determination.

## Perjury

Finally, Thomas argues that Owens and Trattles committed perjury when they testified that they could identify products that were being sold at Fred Meyer because the UPC labels were scanned into their inventory system. Thomas claims that the UPC labels only give information about the manufacturer, and they are in no way associated with Fred Meyer.

Thomas' challenge on this issue is unavailing for two reasons. First, he has failed to indicate anywhere in the record where defense counsel challenged either Owens or Trattles with regards to this testimony. Second, our review of

---

[31] Lawler, 194 Wn. App. at 282-83; State v. Johnston, 143 Wn. App. 1, 17, 177 P.3d 1127 (2007) (observing that counsel's failure to challenge a juror for cause despite some evidence of potential bias could be a legitimate trial strategy).

[32] Lawler, 194 Wn. App. at 285.

12

the record has not uncovered any such challenge. Therefore, we need not consider this issue on its merits.[33] Moreover, Thomas' contentions involve credibility determinations, which this court will not review.[34] Therefore, we decline to address this issue on appeal.

We affirm the judgment and sentence. No appellate costs will be awarded.

*Cox, J.*

WE CONCUR:

*Mann, J.*          *Schindler, J.*

---

[33] See RAP 10.10(c) (court is "not obligated to search the record in support of claims made in a defendant's statement of additional grounds for review").

[34] State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004) (appellate court defers to trier of fact on questions of conflicting testimony and witness credibility).